Emmert Curtis, Plaintiff-Appellant, v. Doyle Johnson, et al., Defendants, Doyle Johnson, et al., Defendants-Appellees.

Gen. No. 10,907.

Fourth District.

February 15, 1968.

Rehearing denied and opinion modified March 5, 1968.

Glenn & Logue, of Mattoon (Thomas J. Logue, of counsel), and Robert N. Corley, of Champaign, for appellant.

Craig and Craig, of Mattoon (Jack E. Horsley, and Richard F. Record, Jr., of counsel), for appellees.

TRAPP, J.

Plaintiff, Emmert Curtis, appeals from an order of the Circuit Court dismissing Counts I and II of an Amended Complaint for recision and other relief based upon a contract alleged to be within the Illinois Securities Law.

Count I alleges that defendant, Kenneth L. Huston, a resident of the State of Nevada, through his agents, the defendants, Doyle Johnson and William Walborn, who are residents of the State of Illinois, did, in Coles County, Illinois, on or about January 6, 1964, sell to plaintiff a document purporting to be a trust receipt as follows:

"TRUST RECEIPT

"WHEREAS, HUSTON HOTEL CORPORATION, a Nevada corporation, Las Vegas, Nevada, has leased from PARADISE HOTEL AND HEALTH SPA CORPORATION, the hotel portion of the property consisting of 400 deluxe rooms to be constructed and completely furnished:

"AND, WHEREAS, it is contemplated for tax purposes that the HUSTON HOTEL CORPORATION will sub-lease to a Limited Partnership on the same basis it is now leasing the hotel from PARADISE HOTEL AND HEALTH SPA CORPORATION with KENNETH L. HUSTON being the General Partner and all other investors to be Limited Partners;

"AND, WHEREAS, the undersigned, KENNETH L. HUSTON as General Partner, agrees to fully consummate this transaction in his name and shall have all of the liability attached to said lease and shall keep and save harmless the Limited Partners from liability of all kinds.

"AND, WHEREAS, fractional interest in such Limited Partnership will be sold on the basis of one per cent (1%) equal to FIVE THOUSAND DOLLARS ($5,000.00) with a minimum share to any Limited Partner of 5% and a maximum share to any Limited Partner of 10%.

"AND, WHEREAS, as soon as possible, but prior to opening date of said hotel, a Partnership Agreement will be drawn and executed by the General Partner and all Limited Partners subject to the following:

"(a) All investors shall have the option at the time the Limited Partnership Agreement is ready to be executed, to enter into such partnership agreement and to become a Limited partner, or to demand and receive back from the undersigned the monies deposited hereunder;

143

"(b) The undersigned shall pay to each investor who elects not to enter into said Limited Partnership, within 90 days after demand, the total amount deposited hereunder by such investor, plus accrued interest as hereinafter provided.

"NOW, THEREFORE, the undersigned, KENNETH L. HUSTON, hereby acknowledges receipt from EMMERT CURTIS of Oakland, Ill. of the sum of $5,000.00, which represents his subscription for a 1% ownership in said proposed Limited Partnership. Said amount is received by the undersigned to be held in trust for said investor upon the terms and conditions herein set forth.

"The undersigned hereby agrees to pay to said investor in quarterly installments from and after January 1st, 1964, an amount equal to 5% per annum on the amount deposited hereunder up to the date of the execution of the Limited Partnership Agreement by said investor, or up to the date his deposit is returned pursuant to demand.

"This Trust Receipt is given and the agreements and conditions hereof are made under the laws of the State of Nevada and relate to real estate located in the State of Nevada and the laws pertaining to interest rates in that state shall govern.

"Dated this 6 day of January, 1964.

S/ KENNETH L. HUSTON
KENNETH L. HUSTON"

Count I alleges:

That the above described document was sold to plaintiff as a security within the definition of section 21 of the Illinois Securities Law of 1953 (Ill Rev Stats 1963, c 121½, § 137.2–1), that defendant Huston issued a promissory note payable to plaintiff which has been retained by defendants Doyle Johnson, William Walborn and others, and it alleges payment of the $5,000 to Johnson and Walborn and receipt by plaintiff of the trust receipt.

That the securities were not registered pursuant to the Illinois Securities Law (Ill Rev Stats 1963, c 121½, §§ 137.1 through 137.19) and said securities were sold in violation of said law.

That plaintiff had no knowledge that the sale was voidable by him at his election until February 17, 1965, when he consulted his attorney, Robert N. Corley, and that on March 14, 1965, plaintiff gave notice by registered mail to the defendants of his election to declare the sale void and to tender back the security and all rights thereunder and demanding payment of the sum of $5,000.

That the defendants refused to accept the tender and make the repayment, and that plaintiff continues to make tender in open court.

The Count asks that the sale be rescinded, that defendants pay plaintiff $5,000, plus interest at 5% from the sale to the decree and court costs and attorneys' fees, and such relief as equity may require.

Count II makes the same allegations except that it does not allege the failure to register the securities under the Illinois Securities Law, and it adds the allegations that the defendants immediately prior to the sale made the following representations:

"A. That the Huston Hotel Corporation, a Nevada Corporation, Las Vegas, Nevada, had leased from Paradise Hotel and Health Spa Corporation the hotel portion of the property consisting of 400 deluxe rooms to be constructed and completely furnished.

"B. It was contemplated for tax purposes that the Huston Hotel Corporation will sublease to a limited partnership on the same basis, it is now leasing the hotel from Paradise Hotel and Health Spa Corporation with Kenneth L. Huston being the general partner and all other investors to be limited partners.

145

"C. That the Revlon Corporation had the lease on the Health Spa Portion of the hotel.

"D. That Doyle Johnson and Dr. Lewis E. Adkins owned a majority interest in the Huston Hotel Corporation with Kenneth L. Huston.

"E. That Kenneth L. Huston, Defendant herein, had a good financial standing and a high moral character."

Count II alleged that each of the representations, A., B., C., D., and E., above were and are false and that each of the defendants knew the said representations were false, that the representations were made to deceive plaintiff and to induce him to purchase the security, that the representations were material and did induce plaintiff to purchase the security.

It further alleges, alternatively, that the representations were made by defendants Doyle Johnson and William Walborn knowing the representations were false, or without knowing and falsely assuming the knowledge thereof.

Plaintiff asserts purchase as a direct result of reliance on the representations.

Count II prays recision of the sale, repayment of $5,000 plus interest, court costs and attorneys' fees.

Counsel for plaintiff assert that the sole issue is whether the trust receipt is a security within the meaning of the Illinois Security Law for the reason that if the instrument is a security, a good cause of action is stated. They state that the trial court based his decision solely upon the conclusion that the document is not a security. Counsel for defendants contend that the receipt is not a security within the meaning of the Illinois Security Law, and that the complaint fails to state a cause of action even if it is. Defense counsel assert many grounds for sustaining the trial court, in addition to the reasons given by the trial judge.

While we cannot agree with the positions taken by counsel for either party for the reason that it appears to us that certain of the representations alleged in Count II are representations of fact and could have been material inducements to a purchase, we do agree that determination whether the trust receipt was a security within the meaning of the Illinois Security Law is required, because proof could be made under either Count I or Count II if the receipt is a security.

The trial court wrote a memorandum opinion with the order dismissing the original complaint, and a second memorandum in reference to a motion to reconsider his order. Both were written before the complaint was amended, and accordingly before Count II was added. The complaint now consists of four counts, but Counts III and IV are not before us. The court entered an order that the order dismissing Counts I and II is separate and immediately appealable.

The trial court's memorandum indicates that the court felt that the trust receipt was not a sale at all, but rather an option to purchase which gave plaintiff a right to receive the $5,000 back "pursuant to the terms of the receipt."

The Securities Law of 1953, as amended, (Ill Rev Stats 1963, c 121½, § 137.12) makes it a violation, inter alia:

> "A. To sell any security except in accordance with the provisions of this Act;
>
> "B. To deliver to a purchaser any security required to be registered under Section 5 hereof unless accompanied or preceded by a prospectus that meets the requirements of the pertinent subsection of Section 5;
>
> ". . .
>
> "D. To fail to file with the Secretary of State any application, report or document required to be

filed under the provisions of this Act *or any rule or regulation made by the Secretary of State pursuant to this Act* or to fail to comply with the terms of any order of the Secretary of State issued pursuant to Secton 11 hereof;

". . .

"G. To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

". . . ."

(Emphasis supplied.)

Count I attempts to allege a violation of A., B. and D. above, and Count II attempts to allege a violation of A. and G. above.

The Illinois Annotated Statutes, SHA, chapter 121½, Appendix pp 525–632, contain a very careful analysis of the history and interpretation of the Securities Law of 1953 as amended, by Samuel H. Young. In reference to the requirement of registration, Mr. Young suggests the following process of elimination, (p 606):

"First, is there a 'security' involved? Second, is there a 'sale' involved? Third, is the security 'exempt' from registration requirements by virtue of Section 137.3? Fourth, will the sale of the security be made in an 'exempt transaction,' as defined in Section 137.4, and therefore exempt from registration?"

In the same Appendix (p 557), in his introduction to the discussion of the Illinois Securities Law of 1953, Mr. Young says:

"In determining whether or not the sale of any security should be registered under the Securities

148

Law of 1953, the general premise should be that the sale of every security in the State of Illinois must be registered unless exempt. The next determination should be whether or not the security is of a type which is expressly 'exempt.' "

Over a considerable period of time the Illinois Legislature has continued to broaden the definition of security until the law applicable at the time of this sale reads as follows: (Ill Rev Stats 1963, c 121½, § 137.2–1):

" 'Security' means any note, stock, treasury stock, bond, *debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement,* collateral-trust certificate, *preorganization certificate* or *subscription,* transferable share, *investment contract,* investment fund share, face-amount certificate, voting-trust certificate, fractional undivided interest in oil, gas, or other mineral lease, right, or royalty, or, in general, any interest or *instrument commonly known as a security,* or *any certificate of deposit for, certificate of interest or participation in, temporary or interim certificate for, receipt for,* guarantee of, or *warrant or right to subscribe to or purchase, any of the foregoing."* (Emphasis supplied.)

The trust receipt in question could certainly be described as a form of "debenture," or as "evidence of indebtedness," or as a "certificate of interest or participation in a profit sharing agreement." It partakes of the nature of a preorganization agreement or subscription, unless one reads into the statute a further limitation applying these terms strictly to a corporation.

The term "investment contract" has been (as pointed out by Mr. Young, Illinois Annotated Statutes, SHA, chapter 121½, Appendix p 580), defined by the Secre-

149

tary of State of Illinois, under Rule 130 of General Rules and Regulations to include "any interest or participation in a contract, transaction, scheme, common enterprise, or profit seeking venture whereby the investor transfers capital to the promoter or promoters thereof, or invests therein, and looks to such promoter or promoters for the success of the venture." Mr. Young points out that this definition is based upon judicial interpretation of the term "investment" contract by the United States Supreme Court in two landmark cases under the Federal Securities Act of 1933. (Securities and Exchange Commission v. W. J. Howey Co., 328 US 293, 90 L Ed 1244, 66 S Ct 1100, 163 ALR 1043; and Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 US 344, 88 L Ed 88, 64 S Ct 120.)

█ Certainly the instrument in question falls within the meaning of any instrument commonly known as a security. It is a certificate of deposit. It is a certificate of interest or participation. It is a temporary or interim certificate. It is a receipt. It is a warrant or right to subscribe for an interest. Neither of the parties has made any point of it, but by the language upon the face, the minimum share as a limited partner is 5%. If 1% equals $5,000 and all investors, other than Huston, must become limited partners to remain investors, then a receipt holder may be required to deposit an additional $20,000 to become a limited partner. Accordingly, it would appear to be a right to become a limited partner, rather than an actual limited partner's present interest.

The mere fact that the trust receipt provides for a redemption or repayment under certain conditions and at times selected by the promoters, i. e., at such time as ". . . the Limited Partnership Agreement is ready to be executed, . . ." does not make it any less a certificate of indebtedness, a certificate of interest, an investment contract, or an instrument commonly known as a security,

receipt or the like. See Sire Plan Portfolios, Inc. v. Carpentier, 8 Ill App2d 354 on p 356, 132 NE2d 78.

■ The second inquiry is whether a sale of a security has been alleged. There is no doubt that a sale has been alleged. The only question is whether the right to refuse the final form of the security, which may be said to convert the document to an option or a right to subscribe, keeps it from being a sale.

First, the mere fact that a "right to subscribe" is itself a security which may be "sold" should answer the question. However, we are not left to speculate upon the meaning of "sale" within the Illinois Securities Law.

Illinois Revised Statutes 1963, chapter 121½, § 137.2–5, is as follows:

> " 'Sale' or 'sell' shall have the full meaning of that term as applied by or accepted in courts of law or equity, and shall include every disposition, or *attempt to dispose,* of a security for value. 'Sale' or 'sell' shall also include a contract to sell, an exchange, *an attempt* or an *offer to sell,* an *option of sale* or a *solicitation of an offer to buy, directly or indirectly; . . . ."* (Emphasis supplied.)

The instrument in question is clearly not an exempt security within § 137.3, nor an exempt transaction within § 137.4 of chapter 121½, Ill Rev Stats 1963.

Defendants' counsel contend that notwithstanding that there is no specific exclusion of the security here involved from the operation of the Illinois Securities Law, there is a well understood and judicially recognized exception to the Illinois Securities Law in the matter of purchase of an interest in a joint venture or partnership, including a limited partnership.

If this case should fall within the category of a joint venture, then it would not be a sale of a security within the Illinois Securities Law under the holding of Polikoff

v. Levy, 55 Ill App2d 229, 204 NE2d 807, certiorari denied 382 US 903, 15 L Ed2d 156. There defendant wrote plaintiff that a group of persons limited to friends and relatives were going into a new venture. He wrote, "We have purchased a parcel of real estate in Springfield, Illinois, and are contemplating building a super deluxe motel which the City is in dire need of. We are selling units of $10,000.00 each and we still have available about 15 units or $150,000.00." There was enclosed a letter giving detailed capital requirements with a total capital of $665,-000.00. Plaintiff agreed to invest $50,000.00, and sent this in two payments of $25,000.00 at different times as well as a later payment of $7,500.00 to be plaintiff's proportionate share of a parking lot adjoining. When plaintiff was asked to accept stock in a corporation he refused and sued to recover his money on the ground that the sale of the "units" was a sale of securities under the Illinois Security Law.

The court in the Polikoff case found that the whole transaction constituted a "joint venture" to buy and improve real estate, and that plaintiff and the others had "equal rights of management and control of the enterprise." The court stated that a security is a transaction whereby one person invests money on the theory that he expects to receive profits "solely from the efforts of others."

It is contended by defendants' counsel that the intended formation of a "Limited Partnership" is the equivalent of a joint venture, and thus some control is vested in the limited partners. Nevada has adopted the Uniform Limited Partnership Act which is the law which applies to such arrangements in Illinois. Generally speaking, the rights of the limited partner are confined to the right to have full information, a share of the income and to have the same rights as a general partner in reference to dissolution and winding up by a decree of court.

152

Under the plan here set forth, the general partner would have the management of the business and be responsible for the making of profits for distribution. We do not think that certain formal controls such as those possessed by limited partners prevent the enterprise from being one in which the investor expects to receive his profits "solely from the efforts of others." The substance of this proposed enterprise is such that profits would come solely from such efforts of others. Here no real estate would be owned by the enterprise, but only a lease of a proposed hotel. The profits would obviously be dependent on the management of the general partner.

We think this situation is not analogous to the case of Polikoff v. Levy, 55 Ill App2d 229, 204 NE2d 807, but is directly analogous to Sire Plan Portfolios, Inc. v. Carpentier, 8 Ill App2d 354, 132 NE2d 78. In that case nominal units of ownership in a New York Apartment building were sold to "tenants in common." Profits from a lease were to be paid to co-owners who were represented by a trustee. It was contended that since the owners of 60% of the unit owners could remove the trustee, there was some control in the owners. The court said, p 359:

> "Plaintiff further suggests that the right granted to the owners of 60 per cent or more of the units of ownership to remove the trustees, appoint new trustees or terminate the trust, is evidence of a control of the management and operation of the enterprise not present in the cases hereinbefore discussed. This control is illusory, not real. The situation of the holders of units of ownership is not unlike the plight of the widely scattered holders of small beneficial interests or shares of stock in reorganized corporate owners of apartment buildings following foreclosure.
>
> "The profits and income, if any, resulting from the Sire plan are produced by the efforts of Sire and its

153

nominees in managing its properties, purchased with the money of many distant investors in small fractional undivided interests, without real control of the enterprise. It is an investment contract within the Illinois Securities Law of 1953, and the order is affirmed."

██ There is no question that agreements to form a limited partnership may be securities under the Illinois Securities Law. Wood v. Meyer, 240 Ill App 100. The attitude of the Illinois courts in reference to resolution of doubts in favor of the purchaser of the "security" is clearly evidenced by Foreman v. Holsman, 10 Ill2d 551, 141 NE2d 31; Silverman v. Chicago Ramada Inn, Inc., 63 Ill App2d 96, 211 NE2d 596, and Meihsner v. Runyon, 23 Ill App2d 446, 163 NE2d 236.

We hold that the trust receipt in question, and the transactions alleged in connection therewith, constituted the sale of a security within the meaning of the Illinois Security Law.

The defendants contend that there are no factual allegations to support a cause of action. Holding as we do that the allegation of the execution and delivery of this trust receipt and the payment of money for it is the sale of a security, the only other facts necessary to be alleged are, the failure to register the security, an election to avoid the sale, and the tender of the security. Since it is alleged that tender was refused and a continuing offer to return is made, no further allegation in these respects would appear to be necessary.

It is contended that there is no sufficient allegation that the plaintiff lacked knowledge of the voidability of the sale until February 17, 1965, at which time he ascertained this fact from his attorney. The statute is as follows (Ill Rev Stats 1963, c 121½, § 137.13):

154

"B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser, within 6 months after the purchaser shall have knowledge that the sale of the securities to him is voidable, to each person from whom recovery will be sought, by registered letter addressed to the person to be notified at his last known address with proper postage affixed, or by personal service; . . . ."

█ Knowledge that the sale is "voidable" is a mixed question of fact and law on which a layman is entitled to acquire his first knowledge from an attorney. We think the allegation is sufficient and that it is subject to answer.

Since the transaction was a sale of a security, refusal to return the money paid with interest would invoke § 137.13A regarding attorneys' fees.

Defendants made the contention that the suit is filed in equity and therefore deprives defendants of a jury trial, and should have been dismissed for this reason. In reference to the judgment on the motion dismissing Counts I and II, we are not presented with any question as to whether defendants have been deprived of a right of trial by jury. We note that in their motion to dismiss, defendants alternatively demanded a trial by jury. Under Ill Rev Stats chapter 110, §§ 31 and 44, and Rule 132 of the Supreme Court Rules, improper designation of a cause is not jurisdictional.

We hold that Counts I and II of the second amended complaint state a cause of action.

The cause is reversed and remanded for proceedings in accordance with the views expressed in this opinion.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.