Moses J. Silverman and Roselyn Silverman, Plaintiffs-Appellants, v. Chicago Ramada Inn, Inc., a Corporation, Benjamin H. Newman, et al., Seymour B. Orner, Executor of the Estate of Mortimer M. Levin, Deceased, Ramada Inn, Inc., a Corporation, Michael Robinson, and Marion W. Isbell, Defendants-Appellees.

Gen. No. 50,003.

First District, Third Division.

September 16, 1965.

Prince and Schoenberg, of Chicago (Perry M. Berke and David B. Schulman, of counsel), for appellants.

Ressman and Tishler, of Chicago, for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Moses and Roselyn Silverman brought this action to rescind the sale of securities made to them in violation of the Illinois Securities Law. Ill Rev Stats 1961, chap 121½, pars 137.1–137.19, inclusive. The defendants moved for summary judgment, their motion was granted and the plaintiffs have appealed.

The summary judgment was predicated upon a finding by the trial court that the plaintiffs did not commence their action within the period of limitation prescribed in section 137.13D of the Act. The statute

provides that no action shall be brought after three years from the date of the sale, and the issues in this appeal concern the sale and the date it was made.

The plaintiffs purchased from the defendants a 3% interest in the Envoy Hotels, Inc., an Illinois corporation which later changed its name to Chicago Ramada Inn, Inc. The first payment on the $9,900 purchase price was made on March 6, 1959, the second on March 19th, the third on May 5th and the last on October 20, 1959, at which time the plaintiffs received the stock and debentures evidencing their interest in the defendant corporation. Sometime thereafter the plaintiffs learned that the securities had not been registered in accordance with the provisions of the Securities Law and, after tendering the stock and debentures to the defendants and demanding a refund, they brought this action in July 1962 to recover the payments made by them.

The Illinois Securities Law of 1953 provides that, with certain exemptions, securities sold within this State must first be registered with the Secretary of State, section 137.5. Violations of this provision may impose criminal liabilities upon the seller of the unregistered securities. In addition, a civil action is created in the buyer by section 137.13A which provides that any sale in violation of the Act is voidable at the option of the buyer. The buyer may elect to tender the securities to either the seller or to the court and sue to recover the purchase money paid by him together with interest, costs and reasonable attorney fees.

The parties agree that the securities sold to the Silvermans were not registered; they agree that, under the Act, all persons participating in the sale are liable to the purchasers for the full amount paid by them; they also agree that purchasers who desire to avail themselves of the protective features of the Act must

bring their action within three years from the date of the sale of the unregistered securities. They disagree, however, as to the application of the limitation provision to the dates involved in the sale and delivery of the securities in question.

The defendants contend that the statute ran from the date of the agreement to buy the securities and the first payment in March 1959. The plaintiffs contend that the statutory period did not start running until the last payment was made and the securities delivered in October 1959.

The question thus presented is when does the limitation period begin to run against a plaintiff who seeks to rescind an illegal sale of securities where the sale is entwined in a series of transactions. The answer to this question calls for an examination of the purpose of the Act and the interpretation of two of its sections: 137.13D and 137.2–5.

■ ■ The legislative intent in enacting the Securities Law is clear. The Act has been called "paternalistic"; by it the State endeavors to shield its citizens from unscrupulous stock promoters. Registration with and approval by the Secretary of State is the primary safeguard, and comprehensive action against all participants in an unauthorized sale is the primary remedy. The purpose of the 1953 Act is stated in Meihsner v. Runyon, 23 Ill App2d 446, 163 NE2d 236, and the purpose of its predecessor, the Act of 1919, is set out in Foreman v. Holsman, 10 Ill2d 551, 141 NE2d 31. In the Meihsner case the court said:

"The objective of the Illinois Securities Act is to protect innocent persons who may be induced to invest their money in speculative enterprises over which they have little or no control. The Act is paternalistic in character and should be liberally construed to better protect the public from deceit

99

and prevent fraud in the sale of stock, bonds and other securities within the state."

In Foreman v. Holsman the court said:

"The Illinois Securities Act of 1919 was enacted for the protection and benefit of the public as a whole—'to protect the public from the dishonesty, incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confident are likely to suffer loss.' (Stewart v. Brady, 300 Ill 425, 442.)"

Mindful of the intent of the Act and the liberal construction which should be given to its provisions we turn to the two pertinent sections. In applying these sections to the facts of this case the trial court commented, after studying the briefs the parties had submitted to him, that no court had passed on the same problem. After reading the cases cited in the briefs filed in this court we are of like opinion. The cases are not in point and are not helpful; neither are the references to the Uniform Commercial Code, the Uniform Stock Transfer Act, the Business Corporation Act or to the former Uniform Sales Act. One or two cases from other jurisdictions have points of similarity but are distinguishable on their facts. None deal with a series of transactions such as confront us here. Section 137.13D provides:

"No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after three years from the date of sale."

Section 137.2–5 states:

" 'Sale' or 'sell' shall have the full meaning of that term as applied by or accepted in courts of

law or equity, and shall include every disposition, or attempt to dispose, of a security for value. 'Sale' or 'sell' shall also include a contract to sell, an exchange, an attempt or an offer to sell, an option of sale or a solicitation of an offer to buy, directly or indirectly. . . ."

■■ This definition of a sale is in itself liberal. Its obvious purpose is to exclude nothing that could possibly be regarded as a sale. Under this broad and unambiguous definition every step toward the completion of a sale would be a sale. The words "shall include every disposition . . . of a security for value" are themselves all-encompassing. In light of this, the narrow interpretation of the limitations provision advocated by the defendants (that the statute starts running from the first and only from the first violation) is not tenable since it is contrary to the legislative intent to protect the buyer at every stage of the proceedings. The end result of so holding would be an illogical one which could deprive the buyer of the very protection the Act was intended to provide. If a seller solicited an offer to buy an unregistered security it would be a sale under the terms of the Act and the seller would be in violation of the Act. If the defendants' interpretation were accepted the limitation period would start to run from the date of this solicitation and not from a later acceptance of the offer or from a payment made pursuant to the acceptance. Certainly, this is not correct for if it were it would mean the statute would commence to run before any right had accrued.

The defendants are correct in their contention that the first transaction was actionable but they are wrong in their contention that it is the only one which is actionable. The buyer has three years to exercise his right of rescission, not only from the date the right

first accrues but from the date the sale is completed by the acquisition of legal title to the securities purchased. In this way the seller may be brought under the provisions of the Act at the earliest possible time, preferably before his illegal activities have advanced far enough to harm potential purchasers, and only in this way can maximum protection be given the buyer from possible loss arising from the purchase of unregistered and unsupervised securities. Any other interpretation would not effectuate the protective design of the Act; maximum benefit would be given the seller whose illegal activities precipitated the action rather than the unwary buyer.

The solicitation by the defendants constituted a sale under the statute as did the payments made by the plaintiffs in March and May 1959. The plaintiffs, if they had known that the securities were illegally sold, could have instituted their rescission action after the agreement to purchase was reached; they could have sued to recover after the first payment or after any one of the interim payments. All were sales under the Act and all were voidable at the option of the purchasers. The final payment in October, the transfer of the stock certificates and debentures, and the passing of title at that time completed the sale and fixed the rights of the parties. The transaction in October was part of the sale and was, in contemplation of the statute, a sale in itself. This is the sale the plaintiffs seek to rescind and it is from the date of this sale that the limitation period must be computed. The plaintiffs' suit, therefore, was filed in apt time.

The summary judgment is reversed and the cause is remanded.

Reversed and remanded.

SULLIVAN and SCHWARTZ, JJ., concur.