Jules R. GREEN et al., Plaintiffs,

v.

WEIS, VOISIN, CANNON, INC., and London Ben Inc., Defendants.

LONDON BEN, INC., Cross-Plaintiff and Cross-Defendant,

v.

WEIS, VOISIN, CANNON, INC., Cross-Defendant and Cross-Plaintiff.

LONDON BEN, INC., Third Party Plaintiff,

v.

FOX & MEYER, a Partnership, Jay Fox and Morton Meyer, Third Party Defendants.

No. 70 C 3145.

United States District Court, N. D. Illinois, E. D.

March 30, 1972.

Rosenthal & Schanfield, Chicago, Ill., for plaintiff.

Stephen C. Shamberg, Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Prince, Schoenberg & Fisher, David L. Fisher, G. M. Newman and D. B. Schulman, Daniel C. Ahern, Chicago, Ill., for defendants.

Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for third party defendant.

## DECISION and ORDER

McMILLEN, District Judge.

Defendants have filed a joint motion for summary judgment on the ground that the Illinois Securities Law of 1953 (1971 Ill.Rev.Stat. Ch. 121½, §§ 137.1 through .19) does not apply to the sales complained of in this case. The court can find no material issues of fact which would preclude granting this motion and concludes that the motion is well-founded as a matter of law. Therefore judgment will be entered in favor of the defendants.

It appears from the pleadings and affidavits that the plaintiffs purchased stock in London Ben Inc. through Weis, Voisin, Cannon, Inc. as underwriter and broker. After the sale was consummated, the defendants failed to file a report with the Secretary of State of Illinois pursuant to Ch. 121½, Section 137.4, subd. G(4) of the Illinois Revised Statutes (1971). Plaintiffs therefore elected to rescind the transaction and have sued for their money back, plus interest and attorneys fees (Ch. 121½, Section 137.13).

The defendants' Motion raises a threshold question, that is whether the transaction by which plaintiffs acquired their stock was a sale of a security in Illinois, as defined by the Illinois statute. It seems clear that if the sale occurred outside of Illinois, the statute does not apply at all, and this is what the court finds did occur.

Section 137.4 exempts certain transactions from registration in Illinois, including

G. The sale or sales of securities, . . . for the direct or indirect benefit of the issuer thereof or a controlling person, whether through a dealer (acting either as principal or agent) or otherwise, within any period of 12 consecutive months to not more than 25 persons in this State if:
. . .

(4) the issuer, controlling person or dealer shall file with the Secretary of State a report of sale not later than 30 days after the sale, setting forth the name and address of the issuer and of the controlling person, if the sale was for the direct or indirect benefit of such person, the total amount of the securities sold under this subsection G, the price at which the securities were sold, the commission or discount paid or given, the names and addresses of the purchasers, and a representation that offers to sell such securities were not made to persons in excess of the number permitted by this subsection. The fee for filing the report of sale shall be $5.00.

A sale is defined in Section 137.2–5 as follows:

"Sale" or "sell" shall have the full meaning of that term as applied by or accepted in courts of law or equity, and shall include every disposition, or attempt to dispose, of a security for value. "Sale" or "sell" shall also include a contract to sell, an exchange, an attempt or an offer to sell, an option of sale or a solicitation of an offer to buy, directly or indirectly; provided that the circulation or publication of an identifying statement or circular or preliminary prospectus, as defined by rules or regulations of the Secretary of State, shall not be deemed a sale or an attempt or offer to sell or solicitation of an offer to buy. . . .

London Ben Inc. is a Delaware Corporation with its principal place of business in Florida. Its founder and original owner negotiated and sold 100,000 shares of his stock to defendant Weis, Voisin, Cannon, Inc., a New York underwriter, in New York. That broker then undertook to market the stock as a private placement. The attorneys for the underwriter were the firm of Fox & Meyer of New York City, third party defendants herein. It appears undisputed that the transactions were exempt from advance registration under Federal and Illinois Securities Laws.

Although the statutory definition of a sale is quite broad (Section 137.2–5 above), the only violation shown by the affidavits in this case is the failure to file a report within 30 days after an actual sale to the plaintiffs. Therefore the court is concerned here only with the usual and ordinary meaning of the word sale, and not with the other aspects of the statutory definition.

With respect to personalty, a sale is made at the place where the last act occurs which makes the transaction complete. McBreen v. Iceco, 12 Ill.App. 2d 372, 139 N.E.2d 845 (1st Dist.1956). With this in mind it is necessary to examine the controlling facts of this sale, which are not in dispute. All of the plaintiffs resided in Illinois except for Nathan Rosenstone who was in Florida at the time involved herein. Defendant Weis, Voisin in Chicago solicited the plaintiffs at their residences by oral and written communications. No complaint is made about the solicitation itself, evidenced primarily by a letter and brochure, supplemented by oral representations emanating from Chicago. Plaintiffs placed their orders by delivering a signed investment letter to Weis, Voisin in Chicago. The letter does not shed light on where the actual transfer of stock was to occur, but it states that a "copy of investment letter will be furnished to the Company's transfer agent with instructions to stop the transfer of the said shares covered by this letter of investment." Rosenstone mailed his letter and check from Florida, and the other plaintiffs presumably delivered their letters and checks to the Weis, Voisin office in Chicago.

All of the checks and letters were forwarded by Weis, Voisin to its head office in New York. The checks had been drawn in March in Chicago and were deposited by Weis, Voisin in its New York bank account in April. A confirmation dated April 11, 1969 was issued and mailed from New York to each plaintiff and on the same day the stock certificates were issued by London Ben, Inc. in New York and delivered to Weis, Voisin. Some were held there in street name for the plaintiffs and some were mailed to their residences.

All of the essential steps to complete the transaction, including the acceptance of the plaintiffs' order by mailing confirmations, occurred in New York City. It does not appear from the record why the checks were held for various periods of time by Weis, Voisin in New York before deposit, or whether they had cleared before the certificates were issued on April 11, but it is a fair inference from the record that the sale to the plaintiffs was to be coordinated with other purchases to make sure that the number of purchasers and number of shares were kept within pre-defined limits. It is also a fair inference that plaintiffs could have rescinded until the confirmations were mailed out or perhaps even later, but neither of these inferences form a basis for the court's decision.

The report required to be filed under subsection 4, subd. G(4) of the Illinois Act is to include the name of the purchaser, the price and commission paid, and other information not available until the sale is consummated. It is true that the Illinois statute attempts to bring other activities within its coverage by including them in the definition of the word "sale", but so far as this case is concerned, it is the failure to report the sale as such which gives rise to the Complaint. This information originated in New York and no report could be filed until the New York office finished the transaction. The plaintiff's argument that other activities besides a common law sale occurred in Illinois and are covered by the Illinois statute is irrelevant in the case at bar.

Plaintiffs point out that defendants can avoid the filing requirement of the Illinois law by consummating their sale outside of Illinois. They also avoided it and the federal law by restricting their sale to less than 25 persons within 12 months. They also can avoid legal difficulties by not making false representations. There is no reason to believe that the defendants engaged in any subterfuge by consummating their transactions in New York or by restricting the number of purchasers to less than 25. The defendants have a right to rely on the law as written and to take advantage of whatever exemptions it may afford. There were perfectly good business reasons for doing every step in the state where it was done, and a perfectly good constitutional reason for the Illinois legislature to refrain from attempting to regulate sales in New York. It is a well-known principle of statutory construction that a law will be applied in such a way as to avoid constitutional questions, and that should be done here. Brown v. Maryland, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827).

The constitutional difficulty with allowing Illinois securities law to control this transaction arises partly from the broad definition of the word "sale". Under plaintiffs' theory the statute would require an underwriter or issuer to file a report of various acts occurring in Illinois even if no actual sale were ever consummated here or elsewhere. This goes far beyond the proper function of protecting local citizens from fraud. It would give them a remedy without a wrong and allow them to rescind unprofitable transactions on mere technicalities. This court believes the construction put on the Illinois law by the attorneys for the plaintiffs is unrealistic and is too broad.

The statute involved in this motion has apparently not been construed by the Illinois reviewing courts on this point. What collateral authority exists seem to favor the defendants. In Mc-

Breen v. Iceco, *supra*, at p. 560, the court dismissed a complaint which did not allege that a sale had occurred in Illinois. And in People ex rel. v. Hill Top Metals Mining Co., 300 Ill. 564, 133 N.E. 303 (1921) the Supreme Court reversed a conviction where the offer was accepted and the stock issued outside of Illinois. Although neither of these two cases arose under the present Illinois Securities Law, they construed similar predecessor statutes and are the most applicable decisions for determining the policy of the Illinois courts.

Plaintiffs rely principally on Silverman v. Chicago Ramada Inn Inc., 63 Ill. App.2d 96, 211 N.E.2d 596 (1st Dist. 1965). This case discusses the broad paternalistic purpose of Illinois Securities Law and holds that the last installment payment and delivery of the securities determine when the statute of limitations begins to run for purposes of rescission. We fail to see how the holding in that case aids the plaintiffs' argument that their "sale" occurred in Illinois, but rather the decision supports the argument based on the acts of the defendants in New York.

■ Even if the Illinois Securities Law were applicable to this case, Section 137.13, subd. A does not appear to give the plaintiffs a remedy. It provides:

*Civil Remedies.* A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and upon tender to the seller or into court of the securities sold . . . the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, . . . shall be jointly and severally liable to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold at the rate of interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the legal rate of interest) less any income or other amounts received by such purchaser on such securities and (2) the reasonable fees of such purchaser's attorney incurred in any action brought for recovery of the amounts recoverable hereunder.

In the case at bar there is no evidence that any feature of the sales violated the Act, but merely that a report was not filed with the Secretary of State within 30 days after the sales. The Illinois statutory definition of a sale, broad as it is, stops at the point of consummation. Section 137.13, subd. A is limited to rescinding sales made in violation of the Act, not validly consummated sales which the seller thereafter failed to report. In short, this case does not involve a sale made in violation of the Illinois Act, and the conclusionary allegations of the Complaint to that effect have been pierced by the parties' affidavits. This interpretation of Section 137.-13, subd. A alternatively disposes of the Complaint, in the court's opinion.

Additional defenses have been raised by the defendants, but they involve issues which are not reached under the foregoing analysis. Each defendant has also filed a cross-claim against the other. Finally, the third party defendants (attorneys for the underwriter) have filed a motion to dismiss. Since the Illinois Securities Law and in particular section 137.13, subd. A do not apply to this transaction, there can be no claim now between the principal defendants or against the third party defendants. The plaintiffs' motion for summary judgment must also be denied.

It is therefore ordered, adjudged and decreed that summary judgment be and is entered in favor of the defendants on the Complaint, and the cross-complaints and third party actions are dismissed. Plaintiffs' motion for summary judgment is denied.