Franklin I. SAEMANN and Orthopedic Equipment Company, Inc., an Indiana corporation, Plaintiffs,

v.

EVEREST & JENNINGS, INTERNATIONAL, a California corporation, et al., Defendants.

No. 71 C 2896.

United States District Court,
N. D. Illinois, E. D.

June 6, 1972.

Bernard E. Harrold, Rupert J. Groh, Jr., John M. Lison, Wildman, Harrold, Ellen & Dixon, Chicago, Ill., for plaintiffs.

Volney F. Morin, Los Angeles, Cal., Walter T. Kuhlmey, Richard B. Rogers, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

McLAREN, District Judge.

This action arises from an alleged agreement for an exchange of stock involving plaintiffs, Orthopedic Equipment Company, Inc. ("OEC") and its sole shareholder, F. I. Saemann, and defendant, Everest & Jennings, International ("E&J International"). Plaintiffs have moved for a preliminary injunction directing all of the defendants, their officers, agents, and attorneys to immediately cease their prosecution of Everest & Jennings International v. F.

I. Saemann, 1968 E. No. 2217, in the High Court of Justice, Chancery Division, of Great Britain. Defendants have filed an opposing motion to stay the proceedings in this Court pending the outcome of the British litigation. Hearings were held on plaintiffs' motion from May 1 to May 5, 1972.

The motion for preliminary injunction is denied. The motion for stay of these proceedings pending the outcome of the British litigation is granted. The following constitutes this Court's findings of fact and conclusions of law for the purposes of the motion for a preliminary injunction and defendants' motion to stay.

E&J International owns all of the shares in Everest & Jennings, Inc. ("E&J INC."), which in turn owns all of the shares of Jennings Investment Company ("Jennings"). Jennings and Saemann each own 45.3 per cent of the equity, which gives each 50 per cent voting control, of Zimmer Orthopaedic Ltd. ("ZOL"), a British corporation. OEC and Jennings each own 46.4 per cent of the equity, which gives each 50 per cent voting control, of Orthopedia GmbH ("OK"), a West German corporation.

In 1967, the owners of the several Everest & Jennings companies decided to make a public offering of stock so that their interests in E&J INC., Jennings Plating Company, and Bernic Screw Products Company, Inc. would have a market quotation. E&J International was formed in 1967 as the holding company through which the reorganization and public offering would be made.

At a meeting with certain officers of the Everest & Jennings companies in Chicago on February 12, 1968, Saemann signed an instrument offering his shares in ZOL and OEC's shares in OK in exchange for E&J International shares as a part of the reorganization. On June 11, 1968, E&J International's registration statement became effective and the public offering commenced. In July of 1968, Saemann started an action in the High Court of Justice, Chancery Divi-

sion, Case 1968 S No. 3704 (the A shares case) against ZOL and its British directors who held the remainder of the shares (non-voting). He immediately obtained a temporary injunction against the planned transfer of these shares to E&J International. In October 1968, E&J International brought the suit to which plaintiffs' motion for a preliminary injunction is directed (the 2217 case). That action seeks to compel specific performance of an alleged contract based on Saemann's offer of February 12, 1968.

This action was commenced on December 3, 1971. Count I alleges that that part of the 1968 reorganization whereby all of E&J Inc.'s stock was acquired by E&J International constituted, in effect, the sale of Jennings' interests in ZOL and OK, in breach of Saemann's right of first refusal created by a 1955 contract. Count I is a claim for specific performance; it requests that the defendants be directed to transfer their ZOL and OK shares to Saemann.

Count III is a bill for declaratory judgment requesting a determination that no contract is or ever was in existence requiring Saemann and OEC to exchange their interests in ZOL and OK for shares in E&J International.

Count II asserts a claim for damages and a declaratory judgment that defendants have violated § 10(b) of the Securities Exchange Act (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 15 C.F.R. § 240.10b–5, promulgated thereunder, and that any contract based on the February 12, 1968 offer which might otherwise exist is void under § 29 of the Act, 15 U.S.C. § 78cc. The instant motion for a preliminary injunction is directed to Count II.

■ To prevail on a motion for a preliminary injunction, plaintiffs must show (1) that they will suffer immediate irreparable injury if it is not granted; (2) that the balance of hardships and conveniences to each side weighs in their favor; and (3) that there is a reasonable likelihood of their success on the merits. Midland-Ross Corp. v. Sunbeam Equip. Corp., 316 F.Supp. 171, 173 (W. D.Pa.), aff'd, 435 F.2d 159 (3d Cir. 1970). The plaintiffs have failed to sustain their burden of proof on any of these points.

## I.

■ Plaintiffs allege that they will be irreparably injured in several ways if defendants are permitted to prosecute the 2217 case for specific performance. They complain that the trial of the case in England will deprive them of a jury trial. This argument can be accorded little weight considering that Saemann himself began the English litigation with the A shares case, to which the 2217 case is primarily a defense (P.Ex. 157). The same consideration applies to plaintiffs' contention that costs, including attorney's fees, are normally assessed against the losing parties in England. Such costs, as well as the inconvenience and expense of defending the 2217 case, are not, of course, irremediable by money damages. As to injury through an adverse decision in that case —such as loss of control of the foreign corporations and contempt penalties— this does not rise above the level of harm that "may possibly ensue." Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267 (E.D.La.1967). Indeed, it appears that even the defendants' English counsel has expressed the opinion that the February 12 document is too vague to be specifically performed under English law, and that the suit was brought only to assist in the defense of the A shares case (P.Ex. 157).

The fact that there have been settlement discussions in the 2217 case also tends to undermine the allegation of irreparable harm (Tr. 690–91).

Thus, it appears that any allegation as to irreparable injury from the English proceedings is at best highly speculative.

## II.

Balanced against plaintiffs' showing of potential harm is the hardship that

would be imposed on defendants if they were enjoined from proceeding in England. The British litigation has been conducted actively for more than three years. After an appeal, the 2217 case has been consolidated for consecutive trials with the A shares case, beginning on June 19, 1972 (Morin affidavit, 12/27/71, Para. 6). In contrast, this action is still at the pretrial stage, with discovery little more than begun. Defendants' English solicitor has testified that if the English cases do not go to trial at the date presently set, it will be necessary to wait until this action is concluded, thus postponing the trials in the A shares and 2217 cases until at least the spring of 1973 (Tr. 483). He also testified that lead counsel for defendants in England may soon be appointed to the bench, with the resulting expense and inconvenience to the defendants of acquainting other lawyers with the cases if they are not tried soon.

In addition to the Everest & Jennings interests, a prompt decision in the British litigation is important to the English directors of ZOL, who are relying on the 2217 action as a defense to the A shares case. Indeed, the winding up of the estate of a recently deceased ZOL director would be delayed if the A shares case were postponed pending a decision here. It cannot, therefore, be said that the balance of hardships is tipped in plaintiffs' favor.

### III.

Nor does it appear that plaintiffs have shown a reasonable likelihood of success on the merits of Count II. There appears to be a strong possibility, in fact, that the 10b–5 cause of action may be barred by the statute of limitations.

In Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir., Jan. 26, 1972), it was held that the three year limitations period in § 13, subd. D., of the Illinois Securities Law, Ill.Rev.Stat. ch. 121½, § 137.13, applies to Rule 10b–5 cases arising in Illinois and brought in the federal district courts in Illinois.

The court adopted the Illinois interpretation that the statute runs "'not only from the date the right first accrues, but from the date the sale is completed'. . . . [Silverman v. Chicago Ramada Inn, Inc., 63 Ill.App.2d 96, 101–02, 211 N.E.2d 596, 599 (1965)]." *Parrent*, supra, at 128. The court also read into the limitations period the equitable doctrine that where a defrauded plaintiff could not have learned of the fraud through the exercise of reasonable diligence, the statute does not begin to run until the fraud is in fact discovered. *Id.*

Because this action was filed on December 3, 1971, it is incumbent on the plaintiffs to show that the statute of limitations did not begin to run until some time after December 3, 1968. From the testimony and exhibits produced at the hearing on this motion, this Court is not persuaded that plaintiffs have shown a reasonable likelihood that the limitations period here applicable has not run.

Based on the evidence adduced at the hearing, it appears that all of the alleged misrepresentations and omissions in connection with the disputed contract must have been made at the February 12, 1968 meeting; at a further meeting on February 19, 1968; and in correspondence during the spring of that year concerning Saemann's participation in the reorganization. There is no evidence that any untrue statement of, or any omission to state, a material fact occurred after December 3, 1968.

Much of the information which defendants allegedly omitted to state in the meetings and correspondence was provided to Saemann and his attorney through a March 28, 1968 preliminary prospectus and the Form S–1 registration statement for the June 1968 offering (Tr. 253–54; D.Ex. 78, 85, 88; P.Ex. 65A, 72, 164 at pp. 49–50, N–Q, V–Z, AA). Facts forming the basis for other allegations of omission and misrepresentation were discovered by Saemann as early as the February 19 meeting (see Plaintiffs' Memorandum in Support of Motion for Pre-

liminary Injunction and in Opposition to Defendants' Motion to Dismiss, p. 45). Thus there does not appear to be a reasonable likelihood that Saemann can show that, through the exercise of reasonable diligence, he could not have discovered the alleged material misrepresentations until some time after December 3, 1968.

Saemann asserts that the statute of limitations has not even now started running because the sale sought to be enforced by E&J International in the 2217 case has not been completed, and the 2217 case is, itself, part of a continuing violation. Plaintiffs rely on Silverman v. Chicago Ramada Inn, Inc., 63 Ill.App.2d 96, 211 N.E.2d 596 (1965) (which was adopted in *Parrent,* supra), for their theory that the Illinois limitations period does not begin running until a sale is completed by the transfer of securities. *Silverman* involved a sale of securities where payment had been made in three installments, with the transfer of title taking place at the last payment. The court held that the statutory period started running at the time of the last payment. But the *Silverman* court was dealing with a situation where the purchasers discovered the illegality of the sale after it had been completed. Here, plaintiffs are aware of the alleged fraud and have sued before the sale is completed. It appears to this Court that the date of discovery of the alleged fraud is the key factor. Considering the availability of an action for rescission or for declaratory judgment, plaintiffs should be required in a situation such as we have here to bring suit within the statutory period after they become aware of the alleged fraud.

Plaintiffs cite Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966), for the proposition that court action in furtherance of acts illegal under the securities law is itself violative of the securities laws. We do not so read the *Studebaker* opinion. It makes only brief reference to certain antitrust cases dealing with this issue. *Id.* at 698. These cases, e. g., Hoopes v. Union Oil Co. of Calif.,

374 F.2d 480 (9th Cir. 1967) and Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F.Supp. 15 (S.D. N.Y.1951), are inapposite. In those cases, the alleged restraints of trade were being implemented by the complained of litigation. Here, the fraud and nondisclosure alleged in connection with the February 1968 offer appear to have occurred before the plaintiffs received financial information concerning the public offering in March and June of 1968, or at least before Saemann in September of 1968 refused to perform the alleged contract. The injury which Rule 10b-5 seeks to prevent—misleading of investors through misrepresentations and non-disclosures—could not have occurred after disclosure or after the person allegedly defrauded refused to go forward with the questioned transaction. Any injury after such events took place would simply constitute additional damages from the first violation, rather than a continuing violation.

## IV.

In the light of the foregoing, this Court concludes that plaintiffs have failed to meet their burden. The motion for a preliminary injunction is accordingly denied.

## V.

All further proceedings and discovery in this case will be stayed pending the disposition of the 2217 case in England, including all appeals in that action. The power to stay proceedings is incidental to every court's inherent power to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Because the A shares and 2217 cases, with nearly the same parties and issues, were initiated before this action, it is appropriate for this Court to stay its hand at this time. Aetna State Bank v. Altheimer, 430 F.2d 750, 755, 758 (7th Cir. 1970). Even if this Court should eventually decide that Count II of the

complaint is not barred by the statute of limitations, the long delay in bringing this action while the closely comparable English cases were proceeding toward trial would make concurrent litigation here inequitable as well as wasteful of judicial resources.

Accordingly, all further proceedings herein, including discovery, are stayed until further order of the Court.