GUARANTEE INSURANCE AGENCY COMPANY, an Illinois corporation, Plaintiff,

v.

MID–CONTINENTAL REALTY CORPORATION, a Delaware corporation, et al., Defendants.

No. 71 C 1927.

United States District Court, N. D. Illinois, E. D.

Nov. 30, 1972.

---

3. This point is disputed by Underwriters, but is irrelevant to the Court's conclusion.

558

George S. Feiwell, James S. Gordon, Edward Slovick, Chicago, Ill., for plaintiff.

Stephen C. Shamberg, Sheldon Karon, John J. Sullivan, William J. Harte, Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, James M. Goff, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Terry M. Grimm, Winston & Strawn, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter is before the Court on motions of certain defendants to dismiss for failure to state a claim (Rule 12, Fed.R.Civ.P.) and for summary judgment (Rule 56, Fed.R.Civ.P.). The motions are granted in part and denied in part. However, leave is granted to plaintiff to amend its complaint, as discussed below.

Also before the Court is plaintiff's motion to have this action proceed with it representing other purchasers in two plaintiff classes and with Kidder, Peabody & Co. representing thirty-seven other underwriters (Rule 23, Fed.R.Civ.

P.). The motion is granted with regard to the plaintiff classes and is otherwise denied.

The complaint alleges that Section 10 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, were violated by issuance of a prospectus from which material information was omitted. It is further alleged that in reliance upon said prospectus Guarantee Insurance Agency Co. ("Guarantee") and others purchased convertible debentures and common stock issued by Mid-Continental Realty Corp. ("Mid-Continental").

Mid-Continental owns and manages residential and commercial real estate in the Chicago area. It was incorporated on February 14, 1969, at which time it acquired various real estate holdings, and other assets.

The omission which is alleged to have violated Section 10(b) and Rule 10b–5 relates to the real estate tax assessments on properties owned by Mid-Continental. The prospectus listed real estate taxes and net income for a five year period, as follows:

|      | Real Estate Taxes | Net Income      |
| ---- | ----------------- | --------------- |
| 1964 | $1,280,654.00     | $262,890.00     |
| 1965 | $1,353,893.00     | $381,290.00     |
| 1966 | $1,519,405.00     | $1,149,549.00   |
| 1967 | $1,638,911.00     | $1,427,278.00   |
| 1968 | $1,844,919.00     | $1,629,122.00   |

These figures are for properties acquired by Mid-Continental upon its incorporation.

The plaintiff alleges that the prospectus was misleading in that it failed to disclose that Mid-Continental was subject to a special risk of having its tax assessments increased. This risk allegedly arose out of representations purportedly made by Mid-Continental officials to the Assessor of Cook County, Illinois, to obtain tax relief on the ground of economic hardship. In substance, the representations were that the post-real estate tax income from certain buildings was so low that continued operation was uneconomic and that the existing assessments made it difficult to compete with similar properties. As a result of these representations, it is claimed, the Assessor reduced the assessed value of properties owned by Mid-Continental's predecessors, allegedly resulting in a savings of $500,000 or more per year for each of the years 1964 through 1968.

The core of the complaint is that this tax relief was completely within the discretion of the Assessor and that Mid-Continental could be denied the relief in future years. Indeed, it is alleged that early in 1971 the Assessor declined to continue this economic relief, with the result that the assessed value of Mid-Continental properties was increased by $5.5 million for the year 1970. This increased valuation is said to have cost Mid-Continental approximately $630,000 in additional real estate taxes for 1970. It is further alleged that the 1971 tax bill would also reflect this reassessment in the amount of $630,000.

Guarantee purchased $2,000.00 in principal amount of 5½% convertible debentures and 100 shares of common stock issued by Mid-Continental. It seeks to have these purchases rescinded or, in the alternative, it requests damages.

*Motion to Dismiss for Failure to State a Claim*

In support of their Rule 12(b) motion to dismiss, certain defendants assert that in an action under § 10 or Rule 10b–5 the plaintiff must allege that he suffered an injury and that a causal nexus exists between the alleged omission and the injury. These assertions will be considered first in regard to a claim for damages and then as to a claim for rescission.

■ Section 10 of the 1934 Act and Rule 10b–5 do not expressly provide for a private cause of action for damages. The courts have implied a remedy, however, so that public enforcement might be supplemented and private parties might have an effective remedy. Superintendent of Insurance v. Bankers Life

and Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

■ As noted above, plaintiff alleged that the Assessor declined to continue the tax relief, details of which were omitted from the prospectus, and that as a result the net income of Mid-Continental decreased. Plaintiff did not allege, however, that the market value of its investments decreased. Before plaintiff could recover damages, he would have to prove that the market value of the common stock and debentures did decline in value. An allegation of such decline must be made in order to state a claim for monetary damages.

Defendants have cited cases stating that a plaintiff must prove that the damage incurred was caused by the acts that allegedly violated Rule 10b–5. Bound Brook Water Company v. Jaffe, 284 F.Supp. 702, 709 (D.C.N.J.1968); Cohen v. Colvin, 266 F.Supp. 677, 683 (S.D.N.Y.1967). The Court agrees that causation is an element, but defendants' cases do not make clear what is necessary in order to satisfy this requirement.

■ The law governing violations of § 10 and Rule 10b–5 is rapidly developing and as yet is not subject to easy interpretation. The Court notes that the tort concept of "causation in fact" is frequently mentioned in regard to the issue of reliance in Rule 10b–5 cases. Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2d Cir. 1970); List v. Fashion Park, Inc., 340 F.2d 457, 464 (2d Cir. 1965). In Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the Supreme Court held that causation in this sense is satisfied by a showing that the undisclosed facts were material. Materiality was defined in terms of the importance that a reasonable investor would have attached to the undisclosed facts. See also Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In this context the courts have adopted what is in essence a "but for" test of causation, i. e., but for the misstatement or omission, the reasonable investor would have acted differently. Bromberg refers to causation in this context as "causation of the transaction." 2 A. Bromberg, Securities Law, § 8.7(2) at 216 (1971).

In speaking about causation in support of their motion to dismiss, defendants raise a different issue: Is Mid-Continental liable for monetary damages if the decline in market value of their securities resulted from circumstances unrelated to the omission from the prospectus? Lurking in the background here is the fact that the decline in value of Mid-Continental securities may have resulted from the federal government's economic controls and the declining market demand for high rise commercial properties. This issue Bromberg refers to as "causation of the economic loss," *supra.*

To illustrate this problem, Bromberg, § 8.7(2) at 219, uses as an example the purchase of stock at a price derived by using a multiple of recorded earnings. The corporate books were juggled, however, and the earnings were actually 20 percent less. Before the purchaser discovers this, "the business continues to run, and fails without identifiable fault of anyone. The stock is worthless. There has been ample causation to support a 10b–5 violation. Is the seller liable for 20 percent of the loss or 100 percent? . . ."

This is indeed a difficult question, which has not been adequately answered by any cases of which this Court is aware. The Court finds it unnecessary to reach that issue on this motion to dismiss, however, since it concerns the extent to which a purchaser would be compensated once a violation is established.

■ A violation of Rule 10b–5 exists if a person is caused by the seller's misrepresentation of or failure to disclose a material fact to purchase something he would not have purchased or is caused

to pay more than he otherwise would have paid. See Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). There the court held that the defendant could be held liable for losses suffered inasmuch as the jury could have inferred that the price plaintiffs paid for the stock was bloated by defendant's failure to disclose material facts.

The test under Rule 12(b) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■■ When it comes to "causation in fact," plaintiff has alleged that he purchased in reliance on the prospectus. As noted above, the test for reliance appears to be identical to materiality. Were the income statement which was contained in the prospectus and set forth in the complaint taken into account, the finder of fact could conclude that the omission was material in light of plaintiff's allegations that "the Prospectus was false and misleading in that it concealed from plaintiff and other public investors the fact that Mid-Continental was subject to a contingent increase in real estate expenses of more than $500,000 annually." Plaintiff also alleged that the tax relief was "within the discretion and judgment of the Assessor." Were such allegations proved, the jury could conclude that plaintiff, had it known of these facts at the time, would have decided either not to buy Mid-Continental's securities or to pay less than it actually did.

Therefore, when considered in light of the *Conley* test for sufficiency of the complaint, the complaint states a claim for damages except for the failure to allege that the value of Mid-Continental's securities declined. Therefore, the complaint is dismissed insofar as it seeks damages, but leave is granted plaintiff to amend its complaint to remedy this defect if it can.

In addition to the remedy for monetary damages that courts have implied, § 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), provides that any contract made in violation of the federal securities laws, or rules and regulations thereunder, shall be void as regards the rights of the party to the contract who has committed such a violation.

■■ To state a claim under § 29(b), plaintiff must allege a violation of Rule 10b–5. The Court has already found that the complaint is sufficient in this regard. As long as it appears from the complaint that the plaintiff might not have purchased the securities or might not have paid as much as it did, it seems unnecessary to allege that the securities did decline in value in order to rescind. Were this necessary, it would mean that one who was defrauded and became aware of that fact would be barred from pursuing a statutory remedy until the bottom dropped out of the market. This Court concludes that one who was defrauded in the purchase of securities should be able to rescind the purchase regardless of whether the securities have already proved to be worthless.

### Motion for Summary Judgment

■ Some of the defendants have also moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment asserting that the action for rescission is barred by the statute of limitations provision of § 29 (b) of the 1934 Act, 15 U.S.C. § 78cc(b), proviso (B). That proviso is only applicable to actions based on a violation of § 15(c)(1) of the 1934 Act. Because this action is based on a violation of § 10 and Rule 10b–5, it is not governed by the statute of limitations set forth in § 29(b).

The defendants also assert that this action is barred by § 137.13 of the Illinois Securities Law of 1953, Ill.Rev.Stat. ch. 121½, § 137.13. In Parrent v. Mid-

west Rug Mills, Inc., 455 F.2d 123, 126 (7th Cir. 1972), the court held that the three year statute of limitations provision in § 137.13 should be applied in actions brought in Illinois for alleged violations of § 10 of the 1934 Act.

Section 137.13 of the Illinois statute makes rescission available to a purchaser protected by that act. Should that remedy be elected, the purchaser must give notice to those he intends to hold liable. That notice must be given within six months of becoming aware that the transaction is voidable.

■ Defendants argue that this action is barred by plaintiff's failure to notify them of its intention to rescind the purchase. The notice requirement in the state statute conditions equitable relief thereunder, but can in no way be incorporated into the federal securities laws under the holding in *Parrent*.

■ The defendants also seek to turn the notice provision into a requirement that actions for rescission must be brought within six months. Notice is a condition precedent to an action for rescission under the state statute, but there is no authority supporting defendants' assertion that a six month statute of limitations exists. Indeed, in Silverman v. Chicago Ramada Inn, Inc., 63 Ill.App.2d 96, 211 N.E.2d 596 (1965), the court applied the three year statute of limitations to an action for rescission.

The final theory offered in support of defendants' motion for summary judgment is that the plaintiff waived its right to rescission by failing to file suit until 14 months after it became aware that a cause of action might exist.

There is a division of authority as to whether the doctrine of laches applies when an action for rescission is brought under § 29(b). In Myzel v. Fields, 386 F.2d 718, 742 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), the court stated that the doctrine of laches did not apply. The rationale was that § 29(b) declared

the transaction void once a violation of Rule 10b–5 was established. The court attempted to distinguish an action based on § 29(b) from a traditional equity action for rescission on the ground that the transaction is void as a matter of law. *Myzel* was cited for the same proposition by the Seventh Circuit in Morgan v. Koch, 419 F.2d 993, 996 (7th Cir. 1969).

Both cases can be distinguished from the case before this Court. In *Myzel*, the defendants had sold the stock and restitution was impossible. "Rescissional" monetary damages were the sought-after remedy. Speculation in market conditions did not appear to be a factor. In *Morgan*, the plaintiff had abandoned her request for rescission. The reference to *Myzel* was therefore dictum.

■ Absent a federal statute of limitations for Rule 10b–5 violations and absent evidence of a congressional intent to exclude the traditional doctrine of laches, this Court is reluctant to disregard that doctrine. Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 214 (9th Cir. 1962).

■ It should be noted that § 29(b) does not make the transaction void, but rather only voidable. The innocent party may choose to enforce his rights under the contract and he must bring suit in order to rescind.

■ Because the market value of stocks and debentures constantly fluctuates, there are sound reasons for forcing such actions to be brought with relative promptness. Doing so does not violate any policy behind the federal securities laws. As the court in *Royal Air Properties, supra,* noted at 213:

> "The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act."

A summary judgment is appropriate only when there is no genuine issue as to any material fact. Rule 56(c), Fed.R.

Civ.P. Mr. Nathan Freedman's deposition and his affidavit submitted in opposition to this motion are in conflict as to when the plaintiff, through Mr. Freedman, its president, first became aware of the allegedly misleading nature of the prospectus.

During Freedman's deposition he referred to certain newspaper articles about the real estate taxes on Mid-Continental's properties and the practices of the Assessor's Office. Speaking from memory, he stated that the articles appeared in the spring of 1970.

In his affidavit, Freedman states that neither article appeared in the spring of 1970 and that the article suggesting Mid-Continental's taxes might increase did not appear until the spring of 1971. Certain articles were attached to the affidavit as exhibits.

Defendants have submitted other newspaper articles in an attempt to rebut Freedman's affidavit. These articles appeared in the spring of 1970. One dealt with the indictment for tax evasion of a former employee in the Assessor's Office. The other dealt with complaints about· real estate taxes received at mobile offices deployed by the Assessor. These are clearly not the articles referred to in Freedman's deposition and are unrelated to Mid-Continental's assessment situation.

■■■■■ Defendants seek to have this Court ignore the conflict in Freedman's statements by suggesting that the deposition is the more credible statement. The Court refuses to make such a determination when ruling upon a motion for summary judgment. However, because the case is going to proceed as a class action, the Court will hold a hearing on the question of laches prior to trial. Before one can represent others in a class action, the named plaintiff must state a valid claim of his own. Mintz v. Mathers Fund, Inc., 463 F.2d 495 (7th Cir. 1972); Kauffman v. Dreyfus Fund, Inc.,

434 F.2d 727, 737 (3d Cir. 1970). Should Guarantee be barred by laches from bringing an action for rescission, it could not represent others in that regard. A preliminary hearing will avoid uncertainty and unnecessarily complicated trial preparation.

*Motion to Determine Class Action*

■■■■ Turning to the plaintiff's motion to have the Court determine that this cause can proceed as a class action, Rule 23, Fed.R.Civ.P., the Court rejects the defendants' contention that the plaintiff must first demonstrate a likelihood that it will succeed on the merits.

■■■■ The plaintiff has prevailed against motions by the defendants to dismiss the complaint and to enter summary judgment. Such motions under Rule 12 and Rule 56, not a class determination motion are the proper means of testing the merits of the case prior to trial. Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971).

A showing of probability of success has been required in a limited number of cases, each of which can be distinguished from the instant case. In Milberg v. Western Pac. R. R. 51 F.R.D. 280 (S.D. N.Y.1970), the plaintiff sought to impose liability on Western Pacific and Dow Jones (publishers of *Barron's Weekly*) because the railroad's earnings did not improve as predicted in an article that appeared in *Barron's*. The court, in denying the motion for a class action, observed that the plaintiff was seeking to establish a new rule of law. In effect, the court expressed doubt as to whether the complaint stated a cause of action and ruled that under the circumstances the case should not proceed as a class action. In the instant case, the complaint does state a claim.

In Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), the defendants were charged with market manipulation. The alleged violation, unlike this case where

a single prospectus is at issue, consisted of a series of overly optimistic statements and insider trading that extended over several years. The hearing was restricted to limited questions, including whether the allegedly overly optimistic statements stood alone or were contradicted by other corporate pronouncements.

■ The only other case cited by the defendants is Wechsler v. Tenna Corp., [1970–1971 Transfer Binder] CCH Sec. L.Rep. ¶ 92,923 (S.D.N.Y., January 20, 1971). Decided by the same judge who decided *Milberg,* the motion to determine the class was provisionally denied. One reason for denying the motion was that it was unclear whether the plaintiff was actually a member of the purported class. This is a legitimate issue under Rule 23.

■ Having decided the defendants' motions to dismiss and to enter summary judgment, this Court is convinced that the only function that a hearing would serve would be to decide factual issues ultimate to the litigation. Such a hearing would deny the plaintiff its rights to a jury and would exceed the scope of inquiry contemplated by Rule 23. Fogel v. Wolfgang, 47 F.R.D. 213, 215 n. 4 (S.D. N.Y.1969); Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 469 (S.D.N.Y.1968).

The plaintiff seeks to bring this action as a representative of two classes of purchasers who relied on the prospectus: one composed of those who purchased the common stock and the other composed of those who purchased the convertible debentures. The plaintiff seeks to qualify for a class action under Rule 23(b)(3), which is designed for situations in which common questions of law and fact predominate.

Such a class designation is appropriate when:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

4. The representative parties will fairly and adequately protect the interests of the class;

5. The questions of law or fact common to members of the class predominate; and

6. The class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ In ruling upon this motion to determine whether the case can proceed as a class action, this Court is mindful of the authority it has to modify the class designations should developments require it. Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968).

Joinder of the members of the two classes would be impractical due to their size. Mid-Continental filed a Form 10–K Report with the SEC that covered the fiscal year ending May 31, 1970. This report stated that there were 727 record holders of its common stock and 560 record holders of its convertible debentures. As there was no public distribution other than the one at issue in this case, in the absence of a contrary showing, the figures in the Form 10–K Report are taken as approximating the sizes of the two classes.

The defendants assert that because the plaintiff purchased his securities from First Hanover Corporation, a brokerage house that was not an underwriter, there must be a separate class for purchasers from nonunderwriters. This contention is more material to the typicality of plaintiff's claim and will be dealt with below. It is noted in passing, however, that there is no need to consider the size of this group at this stage of the litigation.

To qualify as a class action, there must be questions of law and fact common to the class. When it comes to this issue, the parties disagree over whether the omission from the prospectus results in a common question. The defendants seek to distinguish the basis for imposing liability in cases in which a misstatement was made in the prospectus from cases in which there was an omission of material information. It is their contention that the alleged omission cannot be treated as a common question for each purchaser.

The supposed uniqueness of the omission is said to arise from the need to demonstrate injury in order to recover. The case relied upon by defendants is Cannon v. Texas Gulf Sulphur Co. [1971–1972 Transfer Binder] CCH Sec. L.Rep. ¶ 93,307 (S.D.N.Y., December 14, 1971). That case arose from the now famous Texas Gulf Sulphur mineral explorations and the press releases issued by the corporation. Class action status was denied to those who sold TGS stock after exploration began on November 12, 1963, but prior to the first press release on April 12, 1964. During that period the corporation was silent.

The court noted at 91,697 that few sellers could connect their sales to the failure to disclose and that in such a situation it would be virtually impossible for a seller to demonstrate that he would not have sold in the event of disclosure.

The case before this Court is distinguishable from *Cannon* in that Mid-Continental was not silent, but issued a prospectus that was widely circulated. A statement that omits an important fact can be as misleading as one containing an outright misrepresentation.

■ Rather than accept the defendants' position that what a purchaser does not know could not have demonstrably hurt him, the courts have focused on the materiality of the omission. *Affili-ated Ute Citizens of Utah, supra; Mills, supra*. From that standpoint the omission becomes a common question in regard to the numerous purchasers.

The common questions therefore include whether the defendants made a public offering of the securities, whether the defendants issued a prospectus in connection with such public offering, whether the prospectus omitted to state certain facts, whether the allegedly adverse omitted facts were true, and whether they were material.

■ The requirement that claims or defenses of the representative party be typical of the claims or defenses of the class is satisfied as long as the representative has no interests that conflict with members of the class. Cannon v. Texas Gulf Sulphur, 47 F.R.D. 60, 63 (S.D.N.Y.1969); *Mersay, supra.*

The defendants argue that because Guarantee did not purchase the stock and debentures from an underwriter it cannot represent those who did. The defendants acknowledge that a purchaser from an underwriter represented those who bought in the open market in Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y. 1972). They state the reverse is not true, but give no reasons for the distinction. Defendants also state without explanation that open market purchasers may be subject to different defenses than those who purchased from underwriters.

Since defendants have failed to convince the Court that the plaintiff's interests are antagonistic to the interests of other purchasers, and in light of the common nucleus of operative facts, the typicality requirement appears satisfied. Should a conflict materialize, the classes may be redefined in the future. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566 (2d Cir. 1968).

■ Absent any conflict between the interests of the representative and other

purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed. *Dolgow, supra,* 43 F.R.D. at 494.

■ Under Rule 23(b)(3), common questions of law and fact must predominate. There are, of course, certain issues such as damages that vary from purchaser to purchaser. Communications between purchaser and seller may also have varied. The common questions discussed above clearly predominate, however. The individual issues can be reserved for separate trials. *Green, supra;* Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y. 1966).

■ The final consideration is whether the class action is superior to other methods of adjudicating the controversy. Management of the class action presents no serious difficulties. The fact that individual purchasers may not have sustained sufficient damage to justify the cost of individual suits clearly tips the balance in favor of maintaining this suit as a class action. Vindication of rights under the federal securities laws would seldom be accomplished were it not for the class action device.

■ Membership in the two classes is limited to those who purchased the stock or debentures in reliance on the prospectus as alleged in ¶ 16 of the complaint. Plaintiff, in its class determination motion, seeks to include in the class all those who purchased Mid-Continental stocks or debentures without disclosure to them that Mid-Continental was subject to a contingent increase in real estate taxes. Because the complaint and the Court's findings of common questions of law and fact rest on the alleged omissions from the prospectus, all purchasers cannot be included in the class. Without expressing an opinion as to whether those who did not receive the prospectus might have a cause of action for non-disclosure under § 10 or Rule 10b–5, they cannot be included in this class action.

■ This Court rules that the action cannot proceed with Kidder, Peabody and Co. as representatives of the purported class of underwriters. It is alleged that there are 37 other underwriters who are liable in addition to Kidder, Peabody. All of these underwriters are amenable to nationwide service of process. In the Court's view, it is not impracticable to join all members as named party defendants. Winokur v. Bell Federal Savings & Loan Ass'n, [1971–1972 Transfer Binder] CCH Sec.L.Rep. ¶ 93,-461 (N.D.Ill., March 27, 1972); Moscarelli v. Stamm, 288 F.Supp. 453, 463 (E.D.N.Y.1968).

■ The plaintiff argues that addition of thirty-seven more defendants would make the action unmanageable and that the underwriters could intervene if they so desired upon receiving notice. These arguments must be weighed in light of the substantial potential liability of the underwriters and the due process considerations of a class action. Taking all aspects of the case into account, a defendant class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

Rule 23(c)(2) requires that the best practicable notice be given to members of the class when a class action is maintained under Rule 23(b)(3). Plaintiff has sixty (60) days from the date hereof to submit a list of those who are to be notified and a proposal for notification that would satisfy this requirement. At the same time, plaintiff shall brief the question of allocation of the cost of notification. Defendants' answer will be due thirty (30) days following receipt of plaintiff's brief, and plaintiff's reply will be due fifteen (15) days thereafter.

The Court will rule on the matter forty-five (45) days following receipt of plaintiff's reply.

Defendants who have not already done so, shall file their answers to the amended complaint within twenty (20) days of entry of this order.

It is so ordered.