(No. 20647 ■)

WILLIAM K. GLEN, Appellee, *vs.* WILLIAM E. DODSON *et al.* Appellants.

*Opinion filed February 19, 1932.*

THOMAS D. HUFF, (CHAUNCEY M. MILLAR, and HERBERT A. HUFF, of counsel,) for appellants.

ALFRED ROY HULBERT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee, William K. Glen, recovered a judgment for $4750 in the superior court of Cook county against appellants in an action of assumpsit under the provisions of section 37 of the Illinois Securities law for the sale by appellants to appellee of securities in violation of that statute. By their pleas appellants alleged that certain sections of the Securities law are unconstitutional, and they prosecute their

474

appeal to this court on the ground that a constitutional question is involved.

On the trial it was admitted that the securities sold to appellee were securities in class "D" as defined in the statute and that the sale was not an isolated sale as that term is used in the statute. It was conclusively proved by appellee that there had been no attempt made by appellants to comply with the provisions of the statute which prohibit the sale of such securities until certain conditions are complied with. The sale to appellee was made on September 21, 1927, by appellant William E. Dodson, and was of an interest in a so-called common law trust known as Trustees Land Syndicate, of which appellants, with the exception of Robert D. Hessey, were trustees. Appellee paid to Dodson $5000 for 200 shares, or "contract acres," bought by him and received a certificate as follows:

"No. 1260                                          Trustees contract, 200 acres
                    Office of Trustees, 904 Westminster building,
                        110 South Dearborn street, Chicago, Illinois.

*Statement and Agreement*

"This statement and agreement witnesseth: That whereas, in the year 1848, a treaty of peace was entered into by and between the United States and the Republic of Mexico, called the Treaty of Guadalupe Hidalgo, whereby the Republic of Mexico ceded to the United States vast acreage of land and territory, and that in the said treaty, which was confirmed by the United States Congress in July, 1848, the United States government agreed to deliver to all Mexicans, their heirs or assigns, their lands held under Spanish or Mexican grants, when called for;

"That whereas all valid Spanish and Mexican grants in other States than Texas, as far as known, have been confirmed to said Mexican owners, their heirs or assigns, by procedure authorized by Congress, and it is of great importance to the owners of all Spanish and Mexican grants in the State of Texas that these grants should be confirmed under the authority of and by the United States in conformity with the terms of said treaty;

And whereas, Dr. C. G. McCullough, acting as agent for nine trustees, (R. C. Clark, F. A. Beale, A. L. Kanagy, Arthur Colby, W. E. Dodson, Arthur B. Jones, Frank Voightmann, Ross J. Beatty and Robt. H. Stoll,) believes with said trustees and others that an entire or part interest can be secured by purchase or other-

wise from the heirs of the original grantees of the estates of Ramirez, De La Garza, Balli, and other estates. B. F. Nysewander, attorney for the said parties, has investigated said conditions and already has secured deeds in the names of said trustees from the heirs of the said Ramirez, De La Garza and other estates:

"Now, therefore, for the purpose of completing the title to the lands already secured, to obtain the title to lands held by the heirs of the Balli and other estates, and to secure the confirmation of the United States government to such lands as may be obtained, it is agreed between said Dr. C. G. McCullough (agent of said trustees) and William K. Glen that for and in consideration of the sum of one dollar and other valuable considerations, the receipt of which is hereby acknowledged, he will deed or cause to be deeded and furnish an abstract of such lands when the titles are obtained and confirmed by the United States government, two hundred acres of land so held by the trustees to the holder of this contract, who shall have the right to select his land from any of the lands so secured, commensurate with the similar right granted to holders of like contracts.

"It is further provided in trustees agreement that the surplus land over and above the amount necessary to fill all contracts made shall be divided *pro rata* among the contract holders.

"In witness whereof the parties have hereunto set their hands and seals this 21st day of September, A. D. 1927.

C. G. McCullough, <i>Sec.</i>  (Seal)<br>
Wm. K. Glen.  (Seal)

"Countersigned:  W. E. Dodson, *Trustee.*"

In 1928, as a result of certain proceedings in the circuit court of Cook county, the name of the organization was changed from Trustees Land Syndicate to Southwestern Land Trust, and shares of interest in the Southwestern Land Trust were issued to holders of interests or contract acres in the Trustees Land Syndicate upon the surrender of the original certificates, one share in the new organization being issued or exchanged for each contract acre in the old organization. On June 19, 1929, appellee, before he had exchanged his contract acres for shares of the Southwestern Land Trust, wrote to Dodson as follows: "In September, 1927, due to the importunity of yourself and Bob, I made an investment in the Trustees Land Syndicate Co., which has since, in accordance with your statement, been re-

incorporated and is now known as the Southwest Land Trust Co. According to your statements, within six months of the time I purchased this stock I would realize at least one hundred per cent on the investment, and probably in less time, but twenty-one months have elapsed with conditions unchanged. In our conversation of recent date you promised within two weeks (a month has now passed) to relieve me of my holdings, which I asked you to sell at $30 a share, the reason for this being that I have lost the interest on the amount involved for a period of twenty-one months and also the opportunity of making several times the amount in question in other stocks. The point that bothers me the most is that I am still in a quandary in regard to your sincerity. The only way you can prove to me that my confidence has not been misplaced is to keep the last promise which you made, and that is to relieve me of this investment. I know that you are selling stock right along and I do not feel I am asking anything unreasonable. I have reached the point, Bill, where I am not going to chase you any more for something more material than sunny skies, and this is the last overture I am going to make. If I do not hear from you with some visible evidence of your sincerity I shall be forced to take some action which will naturally cause some publicity and be embarrassing."

In reply to this letter, Dodson, under date of June 24, 1929, wrote appellee a letter which is in part as follows: "Your letter surprises me, as you now demand twenty per cent profit on your investment. It is needless to say that I made no representations at that time that were not true, and to demand on the theory that my belief was at the time one hundred per cent investment in which I was mistaken is a wrong attitude for you to take and savors very much the nature of a hold-up. It is needless to say that I will not pay you what you ask. The best I will do for you if you are dissatisfied with your investment is to return to you the $5000 which you paid for your interest

in the trust. If you do not wish to accept this, the only suggestion I can make is for you to shoot."

Thereafter, on June 28, 1929, appellee wrote Dodson as follows: "Thank you for your letter of June 24. I am sorry that you have apparently misconstrued my meaning in asking a price of $30 a share. It is not my intention to even try to be arbitrary, but you will recall that the last time you were talking of the price of the stock to me you advised me that it had gone up five dollars. However, if the market value is $25 a share, it will be quite agreeable to me to dispose of the 200 shares at this price. I sincerely hope that you can move it, as I can use the money to good advantage."

Appellee thereafter surrendered his certificate for 200 contract acres in the Trustees Land Syndicate, which, when introduced in evidence, had thereon an indorsement as follows:

"For value received, I hereby assign, sell and set over unto F. A. Wood all my right, title and interest in 50 acres under this contract and authorize the secretary for the said trustees to transfer the same on the books of the trust, balance to the Southwestern Land Trust for re-issue in that company.     W. K. GLEN. Witness: W. E. Dodson."

Under date of August 6, 1929, there were issued to appellee three certificates for 50 shares each in the Southwestern Land Trust, and on that date appellee signed a receipt which is as follows:     "CHICAGO, *Aug. 6th, 1929.*

"Received of W. E. Dodson twelve hundred and fifty dollars. Being payment in full for 50 shares of Southwestern Land Trust stock sold to F. A. Wood.     W. K. GLEN."

On August 16, 1929, appellee wrote Dodson as follows: "See if you can't sell at least another 50 units, so that I can get the returns this coming week."

On the trial appellee made a tender to appellants of the three certificates for 50 shares each in the Southwestern Land Trust in exchange for $3750, and the tender was re-

fused. The judgment against appellants on the verdict of the jury was for $4750 for 150 shares tendered and $1000 for attorney's fees, it having been stipulated that that amount was a reasonable one for appellee's attorney's fee in case he was entitled to judgment. At the close of the evidence for the appellee, and at the close of all the evidence in the case, appellants moved for a directed verdict in their favor, and these motions were refused.

Appellee by his declaration based his right to recovery on the provisions of section 37 of the Illinois Securities law, which provide, in part, as follows: "Every sale and contract of sale made in violation of any of the provisions of this act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

By pleas filed to the declaration appellants raised the defense that appellee could not recover because he had sold 50 of the shares bought by him to F. A. Wood before bringing his suit. Appellee's replication to these pleas was that he did not sell 50 shares but that appellants redeemed and re-purchased the same, and if they were sold they were sold "on account of the defendants and not on account of the plaintiff." The evidence shows that prior to the time he started his suit he had sold 50 of the shares or contract acres purchased by him. The receipt which he signed for $1250 recited that the amount was "payment in full for 50 shares of Southwestern Land Trust stock sold to F. A. Wood," and he thereafter requested Dodson to see if he could not sell "at least another 50 units." In his testimony appellee

stated that Dodson sold 50 of the shares or contract acres purchased by appellee for his account and that Dodson got him a buyer for 50 of the shares.

By section 37 of the Illinois Securities law the sale of the 200 contract acres to appellee was not absolutely void but voidable, and appellee's right of recovery under the provisions of that section of the law is based on a rescission of the sale. It is well settled by the decisions of this court that before a party to a voidable sale will be permitted to rescind the contract and recover from the other party the money or property which he has parted with under the contract the consideration received must be returned or tendered to the other party *in toto.* (*Wolf* v. *Dietzsch,* 75 Ill. 205; *Harzfeld* v. *Converse,* 105 id. 534; *Smith* v. *Brittenham,* 109 id. 540; *Rigdon* v. *Walcott,* 141 id. 649; *Downing* v. *Harris Trust and Savings Bank,* 318 id. 323.) The inability of the party to restore the consideration will not relieve him from the necessity of doing so, and it is not sufficient to offer to set off the amount against what is claimed from the other party. (*Babcock* v. *Farwell,* 245 Ill. 14.) The sale to appellee of the 200 contract acres was one sale—one single transaction. If appellee desired to exercise his right to rescind that sale it was necessary that he should do so as to the whole of the property sold. He had no right to affirm in part and rescind in part. By his sale of the 50 shares or contract acres he placed himself in such a position that he was unable to rescind the sale to him of the 200 contract acres or to maintain an action against appellants based on a rescission of the sale. The court, therefore, should have given the instruction asked for by appellants to find them not guilty.

It will be unnecessary to consider the other grounds for reversal urged by appellants.

The judgment of the superior court of Cook county is reversed.

*Judgment reversed.*