WILLIAM R. TOBEY, JR., Plaintiff-Appellee, Cross-Appellant, *v.* WALTER R. SUNDLING *et al.*, Defendants-Appellants, Cross-Appellees.

(No. 59987;

First District (5th Division)—December 13, 1974.

William T. Hart and Allan Horwich, both of Schiff, Hardin & Waite, of Chicago, for appellants.

A. Denison Weaver, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought a suit in equity to rescind stock sales and to recover the original purchase price plus interest and attorney's fees pursuant to the Illinois Securities Law of 1953 (the Act) (Ill. Rev. Stat. 1973, ch. 121½, par. 137.1 *et seq.*), which makes certain sales of securities voidable at the option of the purchaser and creates a right of rescission. (Ill. Rev. Stat. 1973, ch. 121½, par. 137.13). An order was entered substituting

Sundling, Pelikan and Carr, not individually but as co-trustees of NX Corporation (formerly Nuveen Corporation) as party defendants in lieu of NX Corporation. (Hereafter, the co-trustees will be called defendants, and NX Corporation and Nuveen Corporation will be treated as one and termed Nuveen.) Judgment was entered in favor of plaintiff for the original purchase price in the amount of $34,303.80, but recovery of interest and reasonable attorney's fees was denied. Defendants appeal from that portion of the decree refunding to plaintiff his purchase price, and plaintiff cross-appeals from that portion of the decree denying him recovery of interest and attorney's fees.

Numerous issues are presented for review. However, we need decide only the first, i.e., whether plaintiff is precluded from obtaining relief under the Act because before attempting to rescind, he sold the securities on which the rescission action was based and thus could not tender the securities to Nuveen. The facts are essentially as follows:

Plaintiff was hired by the Equities Department of Nuveen, an investment banking firm, on August 4, 1968. He was a college graduate and, although he had extensive experience in the securities business relative to sales, he had no experience with the "paperwork" connected with completing a transaction nor had he ever been employed in the "bank office" or the "Compliance Department," which handled the necessary filings with the State regulatory bodies. Nonetheless, as a condition of his employment, plaintiff became qualified as a registered salesman under the Act and executed an affidavit which stated that "he has read the Illinois Securities Law of 1953 [and] that he is familiar with the requirements thereof * * *."

Shortly after commencing his employment, plaintiff purchased 500 shares of nonvoting common stock of Nuveen, which at that time was a member corporation of the New York Stock Exchange. The rules of the Exchange required member corporations to restrict their stock ownership to certain permitted holders; namely, those persons legally qualified to engage in securities transactions on behalf of the member corporation. Authorization for plaintiff's purchase had been given by Nuveen's board of directors prior to the date of his actual employment, to become effective on his employment, and he paid $21,117 for 500 shares of the Nuveen nonvoting common stock for approximately $42 per share. Subsequently, on January 31, 1969, plaintiff purchased an additional 300 shares of Nuveen nonvoting common stock for $13,186.80 or approximately $44 per share. The purchase prices were based upon book values, and no commissions were paid in connection with the sales.

These two sales to plaintiff were not registered under the Act nor were they accompanied or preceded by a prospectus, both of which are re-

quired in connection with the sale by an issuer of registered securities under section 12(B) and (D) of the Act. No report of sale was filed with respect to the first transaction as is required in order to perfect an exemption to the application of the provisions of the Act under section 4(G) as a sale to 15 or fewer persons within a 12-month period. However, it was alleged in Nuveen's answer and testified to by Walter Sundling, an officer of Nuveen, that the failure to file the 4(G) report of sale was due to inadvertence. This was not denied in plaintiff's reply or contested at the trial.

During the summer of 1969, Nuveen experienced financial reversals which required it to withdraw from the securities business and to enter into a plan of liquidation for the benefit of its creditors and security holders. The name of the corporation was changed to NX Corporation. Its equity department was closed down, and plaintiff's services were terminated on August 15, 1969. On that date plaintiff tendered his stock certificates pursuant to a provision in Nuveen's articles of incorporation which reserved to it a right of first refusal to purchase the stock of any security holder upon termination of his employment. From the dates of his purchases, plaintiff's stock certificates remained in the possession of Nuveen. On September 17, 1969, plaintiff and other stockholders were informed by letter of plans for liquidation and the sale of assets. In this letter, plaintiff learned for the first time that the Nuveen bylaws had been amended on July 12, 1969, to allow terminated employees to remain as permitted holders of the stock of the corporation, and that redemption of such employee's stock would not be made "otherwise than in connection with the dissolution of the corporation." It was also stated in this letter that "[t]his procedure was considered necessary out of fairness to all stockholders * * * to treat all stockholders as equally as possible."

On October 31, 1969, plaintiff requested the return of his 800 shares, the certificates for which were returned to him on November 5, 1969. Thereafter, in December of 1969, plaintiff contacted Robert Kelling, a lawyer who was employed at John Nuveen & Co., formerly a subsidiary of Nuveen, and on December 31, 1969, he sold his 800 shares of Nuveen nonvoting common stock to Kelling for $1 per share. Testimony indicated that plaintiff sold his stock to Kelling to take a tax loss. In fact, on his tax return plaintiff, on the advice of his accountant, declared the loss as a business rather than as a capital loss, thus deducting the loss against ordinary income. Plaintiff justified this on the ground that he was initially informed he was required to buy stock before he could become a voting officer of Nuveen, and it was for that reason he purchased the stock in question. It should be noted, however, that the shares purchased were nonvoting common stock. At any rate, plaintiff delivered to Kelling the

stock certificates representing his 800 shares, with an executed stock power.

Plaintiff testified that he first learned that 4(G) reports of sales of stock to him had not been filed by Nuveen when he was so informed by a former employee of Nuveen in June of 1970, some six months after the sale of his stock to Kelling. Thereupon, he attempted to repurchase the stock from Kelling. However, by that time Kelling had registered the stock in his own name and, in exchange, had received a certificate of participation in the liquidation of Nuveen and had already received liquidating dividends of $4.70 per share ($3,760).

Specifically, plaintiff testified that on June 9, 1970, on the advice of his attorney, he telephoned Kelling, who was still employed as a vice president of John Nuveen & Co., and offered to repurchase the shares. During that telephone conversation, after some discussion as to price, plaintiff stated that a figure of $2 per share was agreed upon. In a subsequent conversation on the same day, plaintiff said Kelling agreed to resell the shares to him and also told him to call Walter Sundling, the Nuveen officer who had physical possession of the certificates.

Plaintiff testified that on that same day he called Sundling in order to make the arrangements to obtain possession of the certificates and that Sundling inquired as to the reason plaintiff wanted to reacquire the shares. Plaintiff was then informed by Sundling that he would have to contact Nuveen's counsel in New York and, after doing so, he would "get back" to plaintiff.

On the afternoon of June 9, 1970, plaintiff again called Kelling from the office of his attorney, and the latter explained to Kelling the exact purposes for which plaintiff wanted to reacquire the stock—that he was contemplating bringing an action against defendant. There was also testimony from Don Reid, a former co-employee of the plaintiff, that Kelling had informed Reid in a telephone conversation on the evening of June 9, 1970, that he had reached a decision to sell the stock to plaintiff. Nonetheless, the following morning, according to plaintiff, Kelling called and advised plaintiff that he had changed his mind as he thought it was unfair for plaintiff to bring an action against defendant.

On the afternoon of June 10, 1970, Kelling allegedly again called plaintiff and apologized for his tone of voice in the conversation that morning and further informed plaintiff that it would be to Kelling's disadvantage with respect to his present employment position to proceed with the sale. Plaintiff also testified that Kelling said he had independently reached a decision not to go ahead with the sale.

It was the testimony of Kelling that he never agreed to sell the stock back to the plaintiff.

Opinion

■■ Before a vendee may rescind his purchase of stock sold in violation of the Blue Sky Law[1] and recover his purchase price, he must tender the stock back to the vendor. As stated in *Glen v. Dodson*, 347 Ill. 473, 479, 180 N.E. 393, 395:

> "It is well settled by the decisions of this court that before a party to a voidable sale will be permitted to rescind the contract and recover from the other party the money or property which he has parted with under the contract the consideration received must be returned or tendered to the other party *in toto*."

See also *Morrison v. Farmers Elevator Co.*, 319 Ill. 372, 150 N.E. 330, and *Hammer v. Sanders*, 8 Ill.2d 414, 134 N.E.2d 509.

Plaintiff here concedes that tender is generally a prerequisite to any action for rescission but counters that (1) tender was made; or (2) Nuveen is estopped to raise failure of tender as a defense. We feel that neither response under the facts of this case is viable and that the decision must be reversed for failure of proper tender.

## I.

The fundamental purpose of a tender requirement in rescission actions generally, and under the Act particularly, is to establish that plaintiff, as the owner of shares, can comply with an essential condition in any decree of rescission; namely, that he return the shares in exchange for his original consideration. Since damages are not available as a remedy under the Act, plaintiff must stand ready at all times to return the securities. Thus, in *Glen v. Dodson, supra*, at page 479, the court held that:

> "The inability of the party to restore the consideration will not relieve him from the necessity of doing so, and it is not sufficient to offer to set off that amount against what is claimed from the other party."

Likewise, in *Weisbrod v. Lowitz*, 282 Ill.App. 252, the plaintiff had pledged his securities and thus was unable to tender them into court. The court said, at page 258:

> "A number of cases are cited excusing a tender on the ground that it is shown that the tender would not be accepted * * *. We are of the opinion that a different rule obtains where the penal provisions of a statute are sought to be enforced. It should be noted that tender may be made in open court, which would be pointless if a tender could be excused by a previous refusal. If the defendants were liable they were entitled to receive back the

---

[1] Formerly the Illinois Securities Act of 1919, now the Illinois Securities Law of 1953—the Act involved here.

stock sold, and the tender is not a matter of performance by them but of restitution to them."

The rule applied in the foregoing cases has been referred to as the duty of a rescinding purchaser to keep his tender open or good. In 5 Corbin *Contracts* § 1116 (1964), the author states at page 627:

"[I]t would seem that the tender must be 'kept good' down to the time of judgment, for otherwise the plaintiff might keep the property. The reconveyance would still be required as a condition of restitution of the full price paid." (Footnote omitted.)

To the same effect, see 32 I.L.P. *Sales* § 67 (1957), where the following appears at page 389:

"To be entitled to rescind the contract of sale the buyer must first comply with conditions precedent, such as by returning or offering to return the goods to the seller * * *. Where the buyer puts it out of his power to return the goods he thereby also puts it out of his power to rescind the contract." (Footnotes omitted.)

Here, plaintiff made a tender of his stock to Nuveen by a letter dated August 15, 1969. However, this tender was in connection with the termination of his employment and the practice of the corporation, prior to its change of bylaws on July 12, 1969, to purchase the stock of all persons leaving its employ. Plaintiff's letter of tender at that time referred explicitly to the articles-of-incorporation provision relating to the corporation's right of first refusal to purchase. It did not refer to a purported claim of rescission under the Act. In fact, plaintiff was not aware of a possible right to rescind until he first learned, in June, 1970, of Nuveen's failure to file 4(G) reports. Moreover, on October 31, 1969, plaintiff requested that Nuveen return his stock to him, which it promptly did, and plaintiff then sold the shares to Kelling on December 31, 1969. The explicit notice to Nuveen of election to rescind the sales of stock was first given on June 10, 1970.

■■ In view of the foregoing, we feel that the original tender of August 16, 1969, was not a proper tender under the Act but was merely the tender required by the corporate articles. Furthermore, the sale of the stock to Kelling on December 31, 1969, precluded plaintiff from keeping his tender open or good. Plaintiff's recovery was thus barred absent some conduct on the part of the corporation which would excuse the necessity of tender.

## II.

This conclusion brings us to the alternative contention of plaintiff, that if the tender made pursuant to the articles of incorporation permitting a right of first refusal in the corporation was not a sufficient tender to

rescind under the Act, then tender was excused by Nuveen's conduct.

The doctrine of Equitable Estoppel is defined in *Dill v. Widman*, 413 Ill. 448, 455-56, 109 N.E.2d 765, 769, as follows:

> "The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts. Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations."

Further, it is stated in 18 I.L.P. *Estoppel* § 23 (1956), at pages 85-86:

> "It is an essential element of estoppel that the party against whom the estoppel is asserted must have by his acts or representations induced the party claiming the estoppel to rely on his acts or representations. Conversely, it may be said that one who is not misled by another's conduct cannot claim estoppel." (Footnote omitted.)

Thus, it is necessary to determine whether any statement or conduct by Nuveen upon which plaintiff relied either (1) induced the sale of Kelling; or (2) precluded the repurchase from Kelling.

As to the first point, plaintiff contends, in effect, that estoppel arises from the failure of Nuveen to inform plaintiff of its noncompliance with the filing provisions of the Act, *i.e.*, that defendant had knowledge or was charged with knowledge of its failure to file the 4(G) report of the first sale and thus was charged with notice of the voidability of the sale but failed to disclose this fact to plaintiff.

■■ The rule regarding requisite knowledge before one may be deemed estopped appears in 18 I.L.P. *Estoppel* § 23 (1956), at page 84:

> "Knowledge of the facts is essential to an estoppel in pais, and a person, to be estopped, must have had full knowledge of the real facts at the time of his representation, concealment, or other conduct relating thereto and alleged to constitute the basis of the estoppel.
>
> Although under this rule equitable estoppel cannot be successfully asserted against a person who is ignorant of the facts and the true state of affairs, one whose ignorance or mistake was the result of gross or culpable negligence in failing to learn the facts

will be estopped as if he had full knowledge of the facts." (Footnotes omitted.)

Here, it was asserted by Nuveen and admitted by plaintiff that the original failure to file the 4(G) report required by the Act was "inadvertent." There is no evidence of Nuveen's actual knowledge of its failure to file the report at the time of plaintiff's sale to Kelling. We do not feel such inadvertent failure constitutes such "gross or culpable negligence" as to require that defendant be charged with knowledge of its failure to file the 4(G) statement.

■■ Furthermore, we feel that estoppel envisions some representation or active conduct by the party to be estopped, which induces reliance on that representation or active conduct to the other party's detriment. Here, where there is mere inaction and plaintiff had equal opportunity to check with the Secretary of State to determine whether the 4(G) report had been filed, we fail to see how such inadvertence can give rise to an estoppel.

As to the second point, plaintiff argues that estoppel results from Nuveen's conduct which allegedly interfered with and prevented the repurchase of the stock from Kelling. Initially, it is necessary to determine whether plaintiff could regain all his prior rights had he been able to repurchase the stock from Kelling and thus tender the shares back to the Corporation.

Section 137.13 of the Act (Ill. Rev. Stat. 1969, ch. 121½, par. 137.13) permits rescission upon "tender to the seller or into court of the securities sold * * *." This provision has been construed to require that "before a party to a voidable sale will be permitted to rescind * * * the consideration received must be returned or tendered to the other party *in toto*." (*Glen v. Dodson*, 347 Ill. 473, 479, 180 N.E. 393, 395.) It has been stated that a sale of the subject securities which renders impossible compliance with the statutory prerequisite of tender precludes relief. (*Rotstein v. Reynolds & Co.* (N.D. Ill. 1973), 359 F.Supp. 109.) In a comment on *Glen v. Dodson, supra,* it has been stated that "the victim of a securities fraud who resells, however innocently and harmlessly, a single security that he purchased, thereby forfeits his right to obtain justice." (Elden, *Litigation Under Illinois' Securities Law*, 60 Ill. B.J. 28, 36 (1971).) As appears above in this opinion, in the reference to 5 Corbin *Contracts* § 1116, at 627 (1964), the rule has been characterized as the duty of a rescinding purchaser to "keep his tender open or good."

We believe that the problem involved here, however, is unique in that plaintiff's action is based on a statute, and he sought to buy back for purposes of tender the same stock sold to him. Thus, we feel the

cases relied on by Nuveen (*Glen v. Dodson, supra,* which involves a partial tender, and *Rotstein v. Reynolds and Co., supra,* involving the absence of tender) are not in point.

Defendant also cites *Weisbrod v. Lowitz,* 282 Ill.App. 252, where, at page 259, the court said as follows:

> "[A]fter plaintiff had elected to rescind the purchase and after defendants had denied any liability * * * he continued to exercise, for his own profit, all the incidents of ownership by selling it and keeping the proceeds. He thus waived any attempted rescission."

In the instant case, however, there was no knowledge by plaintiff of Nuveen's failure to file the 4(G) statement at the time of the sale to Kelling, and thus there was no waiver. Furthermore, in *Weisbrod,* plaintiff sold his original shares on the New York Stock Exchange and then, for purposes of a tender, bought back an equivalent number of shares. There was no indication that these repurchased shares were the same shares originally sold. As stated in *Weisbrod,* at page 259:

> "Plaintiff's right to recover is purely statutory, hence all the conditions upon which that right is based must be complied with before a recovery can be had. The statute contemplates that tender must be made *of the stock sold* unless this is excused by the action of the other party which led to an exchange." (Emphasis added.)

We are of the opinion, therefore, that plaintiff could have regained all his prior rights had he been able to repurchase the stock from Kelling and thus make tender "of the securities sold" him by Nuveen. The issue then concerns whether Nuveen's conduct influenced Kelling's refusal to resell to plaintiff. In this regard, it appears that at the time of the attempted repurchase, Nuveen knew that it had failed to file the 4(G) statements relative to its original sale to plaintiff and was aware of plaintiff's desire to rescind that sale. However, Kelling testified that no one connected with Nuveen Corporation or John Nuveen & Company directed or influenced his refusal to resell to plaintiff. He testified that the decision not to resell was entirely his own, and that he was not going to make it easy for plaintiff to sue because there were similarly situated persons with Nuveen, *i.e.,* other shareholders who were his friends who not only had taken a loss on the collapse of Nuveen but would take a further loss if plaintiff recovered his original purchase price. Kelling also denied ever agreeing to sell to plaintiff, and he appears to be corroborated by the $2 per share price plaintiff says was agreed upon, inasmuch at it was known at that the liquidation redemption would render substantially more than that amount, and did in fact return $4.07 per share.

Also, Walter Sundling, the officer of Nuveen who was the keeper of records, testified he had no recollection of any conversation with plaintiff.

Furthermore, the fact that Reid, an unsuccessful plaintiff against the trustees, was permitted to testify that Kelling told him he would resell to plaintiff does not carry a reasonable inference of improper influence on the part of the corporation. The record does not disclose any evidence of any conduct on the part of any official of the corporation which could be construed as pressure on or interference with Kelling's decision not to resell to plaintiff. In fact, plaintiff on cross-examination stated that Kelling told him that "he had independently reached a decision not to tell the stock."

Finally, a telephone conversation from Frank Wendt, chief executive officer of John Nuveen & Co., to a partner of the firm employing plaintiff after he left Nuveen, advising the latter of plaintiff's intent to use Nuveen, is not proof of any influence by it over Kelling. No request was made of the employer to do anything, and there is nothing to indicate any action was taken by the employer as a result of this conversation. Neither is it contended that it adversely affected plaintiff's employment or prevented the filing of this suit. In any event, that conversation is not evidence of any pressure on the relevant Kelling-plaintiff resale discussions.

■■ Thus, we conclude that Kelling's decision not to resell appears independently and personally motivated and that there is no evidence of an estoppel relative to the stock repurchase negotiations. Therefore, Nuveen could properly interpose the defense of plaintiff's failure to tender the stock sold and, the failure not being excused, the relief requested by plaintiff should have been denied.

For the above reasons, the judgment of the trial court is reversed and the cause remanded with directions to enter judgment for defendants.

Reversed and remanded with directions.

DRUCKER and LORENZ, JJ., concur.