**418**

In the Matter of David and Carol
VAN DYKE, Debtors.

Bankruptcy No. 79 B 5731.

United States Bankruptcy Court,
N. D. Illinois, E. D.

Sept. 30, 1982.

David N. Missner, Malcolm M. Gaynor,
Schwartz, Cooper, Kolb, & Gaynor Char-
tered, Chicago, Ill., for petitioners and debt-
ors.

Richard C. Frasco, Peoria, Ill., George H.
Litow, Paw Paw, Ill., Patrick Mazza & As-
soc., Chicago, Ill., for respondents and
claimants.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy
Judge.

The issues brought before this court in-
volve the validity of certain claims filed
against David Van Dyke and his wife, Carol
(hereinafter referred to as debtors).

In November of 1977, the debtors formed an Illinois limited partnership, Century Coal Enterprises, for the purposes of mining coal in the state of Kentucky. As general partners, they solicited capital in return for an interest in the limited partnership. The debtors raised approximately $750,000.00 in capital from investors who apparently were fellow church members and residents of the Peoria, Illinois area. By September of 1978, however, the debtors elected to terminate the operation of Century Coal Enterprises.

Several months later, on or about December 15, 1978, David Van Dyke sent a letter, prepared by his counsel, to each investor offering to repurchase his interest in the limited partnership for the original purchase price, plus six percent (6%) interest. (A copy of such letter is attached as appendix to this opinion.) Within several days of the offer to repurchase, the debtors sent another letter to each investor. This letter stated that in return for their shares in Century Coal and a release of all liability stemming from the sale of the shares in the limited partnership, the investor would receive an interest in Skyview Investment Ltd., also an Illinois limited partnership.

The alternate proposal was accepted by many of the investors. However, the claimants in this adversary proceeding, in one form or another, elected to accept the original offer of repurchase. Eventually, on June 22, 1979, the debtors filed a petition under Chapter XI of the prior Bankruptcy Act.

The following is a list of the claimants involved in this proceeding:

GROUP A

| Claim Number | Name | Amount |
| --- | --- | --- |
| S–6 | Bruce Sutton | $10,000.00 |
| B–6 | Jerry & Judith Borton | 10,000.00 |
| G–5 | Joseph Goebel | 10,000.00 |
| J–5 | Gene Johnson | 5,000.00 |
| L–4 | Anthony Laskowski | 10,000.00 |
| S–7 | Elmer Schaufelburger | 10,000.00 |
| V–2 | H. Dale Vick | 7,500.00 |

GROUP B

| | | |
| --- | --- | --- |
| J–4 | Elling Johnson | 10,000.00 |
| L–3 | Bobby Lovell | 5,000.00 |
| P–3 | Ronald Parkins | 7,500.00 |

The debtors stipulated that the amount listed after each claimant represents the amount each originally invested in Century Coal Enterprises. The claimants in both groups accepted and notified the debtors within 15 days after receipt of the offer to repurchase.

The claimants in Group A, while accepting the offer of repurchase, still retained their certificates of interest in Century Coal Enterprises. Those in Group B sent the certificates of interest in Century Coal, along with their acceptances, to the debtors. The debtors do not dispute that each claimant in some form communicated their wish to accept the repurchase offer within the 15 day period.

The debtors argue that validity of the claims is controlled by the Illinois Securities Law of 1953, Ill.Rev.Stat. Ch. 121½, § 137.1 et seq. (1981). Section 13 of the Illinois Securities Law is particularly pertinent. It provides as follows:

§ 13. Civil remedies. A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and upon tender to the seller or into court of the securities sold or, where the securities were not received, of any contract made in respect of such sale, the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale, shall be jointly and severally liable to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities

sold (or if no rate is stipulated, then at the legal rate of interest) less any income or other amounts received by such purchaser on such securities and (2) the reasonable fees of such purchaser's attorney incurred in any action brought for recovery of the amounts recoverable hereunder.

B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser, within 6 months after the purchaser shall have knowledge that the sale of the securities to him is voidable, to each person from whom recovery will be sought, by registered letter addressed to the person to be notified at his last known address with proper postage affixed, or by personal service.

C. *No purchaser shall have any right or remedy under this Section who shall fail, within 15 days from the date of receipt thereof, to accept an offer to repurchase the securities purchased by him for a price equal to the full amount paid therefor plus interest thereon and less any income thereon as set forth in subsection A of this Section.* Every offer of repurchase provided for in this subsection shall be in writing, shall be delivered to the purchaser or sent by registered mail addressed to the purchaser or sent by registered mail addressed to the purchaser at his last known address, and shall offer to repurchase the securities sold for a price equal to the full amount paid therefor plus interest thereon and less any income thereon as set forth in subsection A of this Section. Such offer shall continue in force for 15 days from the date on which it was received by the purchaser, shall advise the purchaser of his rights and the period of time limited for acceptance thereof, and shall contain such further information, if any, as the Secretary of State may prescribe. *Any agreement not to accept or refusing or waiving any such offer made during or prior to said 15 days shall be void.*

Ill.Rev.Stat. Ch. 121½, § 137.13(A), (B), (C) (1981) (emphasis added).

In order for Section 13 to be applicable, the certificates of interest in the partnership must constitute a security. In Illinois, a security is defined as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, *certificate of interest* or participation in any profit-sharing agreement, collateral-trust certificate, prereorganization certificate or subscription, transferable share, *investment contract,* investment fund share, face-amount certificate, voting-trust certificate, fractional undivided interest in oil, gas, or other mineral lease, right, or royalty, option, put, call, privilege, indemnity or any other right to purchase or sell a contract for the future delivery of any commodity offered or sold to the public and not on a registered contract market, or, in general, *any interest or instrument commonly known as a security,* or any certificate of deposit for, *certificate of interest* or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Ill.Rev.Stat. Ch. 121½, § 137.2–1 (1981) (emphasis added).

■ The Illinois courts in interpreting this definition have held that the sale of certificates of interest in a limited partnership constitutes a "security" transaction as governed by the Illinois Securities Law of 1953. *Anvil Investment Limited Partnership v. Thornhill Condominiums, Ltd.,* 85 Ill.App.3d 1108, 41 Ill.Dec. 147, 407 N.E.2d 654 (1st Dist. 1980) (sale of unregistered interests in real estate limited partnerships was unlawful). *See also, Curtis v. Johnson,* 92 Ill.App.2d 141, 234 N.E.2d 566 (4th Dist. 1968) (limited partnership interest is a "security" under Illinois Securities Law of 1953). Based on these decisions, this court holds that the certificates of interest in Century Coal Enterprises constitute securities. Consequently, the Illinois Securities Law of 1953 is applicable to the controversy herein.

■ The debtors argue that the acceptance of each claimant in Group A was not effective because these claimants did not

tender their certificates of interest in Century Coal Enterprises to the debtors within the fifteen day statutory period. Thus, this court must decide whether the Illinois Securities Law of 1953 requires the physical tender of the securities in addition to the communication of acceptance in order to effectively accept an offer of repurchase.

In support of their position that the tender of the securities is necessary for a valid acceptance, the debtors refer to the case of *Tobey v. Sundling,* 25 Ill.App.3d 205, 323 N.E.2d 30 (1st Dist. 1974). In *Tobey,* the court held that a vendee must tender the stock back to the vendor in order for the vendee to rescind his purchase of the stock.

The court in the case at bar, however, does not find the decision in *Tobey* to be persuasive. *Tobey* involved a vendee's suit to rescind a sale of securities under Section 13(A) of the Illinois Securities Law. In that case, the securities could not be tendered to the vendor because the vendee had sold them to a third party. *See also Shofstall v. Allied Van Lines, Inc.* 455 F.Supp. 351 (N.D.Ill.1978) (prospective plaintiff cannot satisfy statutory requirement of tender under Section 13(A) if the shares have already been sold); *Rotstein v. Reynolds,* 359 F.Supp. 109 (N.D.Ill.1973) (plaintiff who sold all of the subject securities he had purchased cannot allege tender under Section 13 of the Illinois Securities Law of 1953).

The controversy herein involves the acceptance of an offer of repurchase under Section 13(C). The offer of repurchase was initiated by the debtors, pursuant to the urging of the Securities Division of the Secretary of State. The claimants in Group A have not sold their certificates of interest to third parties, but have merely held on to the certificates pending the resolution of their claims against the debtors. Moreover, the certificates apparently are worthless because the partnership ceased operating in 1978.

Section 13(C) requires only that "a purchaser must accept the offer of repurchase within 15 days from the date of receipt."

This section does not mention the need to tender the securities to the seller, as provided in Section 13(A). This court has been unable to find any case law interpreting or applying Section 13(C), but this provision has been considered to be a means whereby a securities law violator may reduce the period in which he may be sued by a buyer. Loss, *The Conflict of Laws and the Blue Sky Laws,* 71 Harv.L.Rev. 209, 241 (1957). Since the claimants in Group A accepted the offer to repurchase within the fifteen day period, the intent of Section 13(C) to allow only timely claims has been satisfied. Considering that the Illinois Securities Law of 1953 is paternalistic in nature and designed to protect the investing public from fraud, *Silverman v. Chicago Ramada Inn, Inc.,* 63 Ill.App.2d 96, 99, 211 N.E.2d 596, 598 (1st Dist. 1965) (quoting *Miehsner v. Runyon,* 23 Ill.App.2d 446, 456, 163 N.E.2d 236, 241 (2d Dist. 1960)), this court will not read into Section 13(C) an additional requirement that the buyers must tender their securities to the seller within the fifteen day period. Thus, this court holds that the acceptance made by the claimants in Group A was effective to comply with Section 13(C).

■ The debtors also argue that the claim of Bruce Sutton (S–6) should be disallowed because he failed to appear in court to testify as to his claim. Mr. Sutton, however, was excused from appearing in court to testify, pursuant to a stipulation of the parties and a draft order by this court dated September 10, 1981. Moreover, Mr. Sutton's position was explained satisfactorily by the testimony of Mr. Van Dyke and fellow investors with identical claims. Consequently, this court holds that Mr. Sutton's claim against the debtors is allowed.

■ Finally, the debtors contend that the claims of the claimants in Group B should be disallowed because the debtors' offer to repurchase was conditional on Century Coal Enterprises' having the money to repurchase the claimants' interest. The debtors argue that since the claimants knew that Century Coal had no funds, the claimants' only viable choice was to exchange the

shares of Century Coal Enterprises for interests in Skyview Investments, Ltd. (As previously stated, the claimants in Group B not only accepted the offer of repurchase within the fifteen-day statutory period, but also tendered their securities to the debtors at the same time.)

The debtors' theory of conditional rescission is based on the 1869 case of *Ellington v. King,* 49 Ill. 449 (1869). In *Ellington,* the plaintiff exchanged a horse for defendant's mare, with the defendant's son acting on behalf of the defendant. When the mare proved to be unsound, the plaintiff requested that the defendant's son return the horse. The court ruled that although the defendant's son was empowered to sell the mare, he was not empowered to rescind the contract at a subsequent time. *Id.* at 450.

This court finds the *Ellington* decision to be unpersuasive, because the holding was based primarily on principles of agency law, not securities law. Moreover, this court's research indicates that there is no recorded case which uses the theory of conditional rescission for the proposition asserted by the debtors.

With regard to the inability of Century Coal Enterprises to repurchase the interests of the claimants in Group B, testimony during the court hearing indicates that the claimants in Group B were aware that the debtors (personally) had a substantial income. General partners are personally liable for claims against a limited partnership. *Bayles v. Bennett,* 22 Ill.App.3d 144, 316 N.E.2d 792 (4th Dist. 1974) (partners are jointly and severally liable for partnership debts). *See also Delaney v. Fidelity Lease Ltd.,* 526 S.W.2d 543, 546 (Tex.1975) (general partner is personally liable for claims against a limited partnership). Accordingly, the claimants in Group B had reason to believe that their acceptance of the offer to repurchase could be satisfied by either the partnership or the debtors. Also, the offer

to exchange the claimants' interest for interests in Skyview Investment, Ltd. was an alternate proposal; the original offer of repurchase was not revoked. Thus, even if conditional rescission is a viable theory, the elements of that theory have not been satisfied in this case. Consequently, this court holds that claims of the claimants in Group B are allowed.

The claimants are to furnish a draft order in accordance with this opinion within five (5) days.*

### APPENDIX

Century Coal Enterprises

P. O. Box 2084

East Peoria, IL 61611

Ph. 309—694–6414

Dear Sir:

On the 24th day of March, 1978, The Century Coal Enterprises sold to you Limited Partnership Units at the price of $10,000 for 1 unit.

The sale of these securities appears to have not been in compliance with The Illinois Securities Law of 1953 and accordingly, by virtue of Section 13 thereof, is voidable by you at your option. Therefore, Century Coal Enterprises hereby offers to rescind and set aside this sale and to refund to you the entire purchase price paid therefore together with interest at the rate of 6 percent from 3/24/78, the date of sale of said securities, to date.

Should you decide to accept this offer of rescission, kindly return the above described securities to this office together with a written notice of your election to accept said offer of rescission and the purchase price plus interest will be refunded to you.

This offer is good for fifteen (15) days after your receipt of this letter; and if you

---

* This decision is entered in compliance with the stay of enforcement until October 4, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982), and the decision of the United States Court of Appeals for the Seventh Circuit in *Farmers Union Central Exchange, Inc. v. Hertz,* No. 82–2211 (7th Cir. August 13, 1982).

fail to accept it within that period, your rights to recover under The Illinois Securities Law of 1953 will be extinguished.

Very truly yours,
/s/ David C. Van Dyke
David Van Dyke
Century Coal Enterprises