PER CURIAM.
 

 The Van Dykes appeal, from a decision of the United States District Court for the Northern District of Illinois that the bankruptcy court properly allowed appellees’ claims as creditors against the Van Dykes. The Van Dykes had argued that appellees’ claims could be allowed only if their acceptance of David Van Dyke’s offer to repurchase certain securities were in compliance with Ill.Rev.Stat., ch. 121'A, § 137.13.
 
 [1]
 
 Be
 
 *433
 
 cause appellees
 
 [2]
 
 had not tendered their securities at the time they gave Van Dyke notice of acceptance, the Van Dykes contended that appellees had not validly accepted the offer and therefore did riot state claims which the bankruptcy court could allow. The bankruptcy court decided that Section 137.13(C) was controlling, and concluded that the statute does not explicitly require tender as a prerequisite for a valid acceptance of an offer to repurchase, 23 B.R. 418. Because Section 137.13 was intended to protect investors, the court concluded that it should not be construed to include an implicit tender requirement (App. at 7) and therefore allowed appellees’ claims. The district court affirmed the bankruptcy court order allowing the claims but without reaching the issue of whether Section 137.13(C) required a tender. Instead, the district court determined that appellees’ verbal acceptances of Van Dyke’s offer contained implicit offers to tender (App. at 14). We agree that the bankruptcy court properly allowed appel-lees’ claims, because Section 137.13(C) does not require a tender of the security for a valid acceptance of the offer to repurchase. Therefore, we find it unnecessary to decide whether appellees’ acceptances included implicit tender offers.
 

 On June 22, 1979, the Van Dykes filed a petition in bankruptcy under Chapter XI of the prior Bankruptcy Act, 11 U.S.C. §§ 701-799 (1976), repealed by the Bankruptcy Reform Act (November 6, 1978) effective October 1, 1979. Appellees are among those who filed claims in that proceeding as creditors of the Van Dykes. These claims arose pursuant to a pre-bank-ruptcy petition communication by David Van Dyke about Century Coal Enterprise, an Illinois limited partnership formed by the Van Dykes who were general partners in this enterprise; appellees were some of the limited partners. Since limited partnership interests are securities under Illinois law, their sale must comply with the Illinois securities laws.
 
 Curtis v. Johnson,
 
 92 Ill.App.2d 141, 234 N.E.2d 566 (1968). Where a sale is in violation of Illinois securities laws, Ill.Rev.Stat., ch. 121V2, § 137.13 (Section 13 of the Illinois Securities Law of 1953) establishes the civil remedies available to the purchaser.
 

 On approximately December 15, 1978, David Van Dyke sent the limited partners, including appellees, a letter offering to repurchase for the original purchase price (plus 6 per cent interest calculated from the date of purchase) the partnership interest of each limited partner who accepted the offer within 15 days after receiving the letter. Van Dyke stated in the letter that “[t]he sale of these securities appears not to have been in compliance with The Illinois Securities Law of 1953 and accordingly, by virtue of Section 13 thereof, is voidable by you at your option” (App. at 19). In their briefs, appellants specify that the sale violated Illinois securities laws because a re
 
 *434
 
 port of sale required pursuant to Ill.Rev. Stat., Section 137.4(G), had not been filed (Ap’t. Br. at 11; Reply Br. at 1). This failure to register a non-exempt security is a securities law violation remediable under Section 137.13.
 
 Gowdy v. Richter,
 
 20 Ill. App.3d 514, 519, 314 N.E.2d 549, 553 (1974).
 

 Section 137.13 establishes alternative remedies for securities sales which violate Illinois securities laws. Under Section 137.13(A),
 
 supra
 
 note 1, a purchaser of the security may take the initiative' and void the sale. To do so, he must notify “each person from whom recovery will be sought” of his election to void the sale (Section 137.13(B),
 
 supra
 
 note 1). Notice is provided by sending each person a registered letter within six months after the purchaser has knowledge that the sale is voidable {Id.). Additionally, before those persons may be liable to return to the purchaser the price paid plus interest, the purchaser must tender to the seller or the court the securities themselves (Section 137.13(A)). In the event the purchaser did not receive the securities he must tender “any contract made in respect of such sale” {Id.) or at least make “a sufficient tender by offering to return all that [he] had received.”
 
 Hammer v. Sanders,
 
 8 Ill.2d 414, 425, 134 N.E.2d 509, 513 (1956), certiorari denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79.
 

 An alternative remedy is stated in Section 137.13(C),
 
 supra
 
 note 1. Under that provision, a person who may be exposed to liability under Section 13 is empowered to avoid the purchaser’s right to proceed under Section 13(A) by instead making an offer to repurchase the illegally-sold security. Once a purchaser receives such an offer, he must accept it within 15 days to preserve any Section 13 remedy; failure to accept the offer within that time not only expunges his right to have his securities repurchased under Section 13(C) but also disables him from suing under Section 13(A) to void the sale (Section 137.13(C)). By issuing the repurchase offer, then, Van Dyke cut off appellees’ opportunity to proceed under Section 13(A); any Section 13 remedy available to appellees as a result of Van Dyke’s securities law violation could arise only under Section 13(C). Because the Van Dykes contend that appellees’ attempts to accept the repurchase offer without tendering their securities make their acceptances ineffective and therefore deprive them of any Section 13(C) remedy, it is necessary to determine whether appel-lees’ responses to Van Dyke’s offer were effective acceptances under Section 13(C).
 

 We hold that appellees did make effective acceptances, even absent tender, in compliance with the requirements of Section 13(C). As the bankruptcy court determined, all the appellees “in one form or another elected to accept the original offer of repurchase” (App. at 2). Appellees Vick and Schaufelberger testified that they delivered to Van Dyke on December 20, 1978a letter stating that they accepted the repurchase offer. (July 7 Tr. at 49, 71.) The Bortons and Laskowski testified that within 15 days after receiving the offer they sent Van Dyke registered or certified letters stating their acceptance
 
 {Id.
 
 at 60, 66, 94). At Goebel’s direction, on December 29, 1978, his attorney sent Van Dyke a registered letter accepting the repurchase offer (Sept. 10 Tr. at 6). On December 22, 1978, Gene Johnson sent Van Dyke a certified and registered letter accepting his repurchase offer
 
 {Id.
 
 at 34-35). Bruce Sutton orally accepted the repurchase offer at a meeting which he and Mr. Borton had with Van Dyke on December 19, 1978 (Oct. 29 Tr. at 41). These verbal communications of each appellee manifested the acquiescence of each in the terms of the offer. As such, they constituted effective acceptance of the offer in compliance with Section 13(C).
 

 Other than to impose a 15-day limit on acceptance, Section 13(C) does not state expressly what an offeree of a repurchase offer must do to accept the offer. Nor have the Illinois courts articulated any requirements for accepting a Section 13(C)
 
 *435
 
 offer.
 
 [3]
 
 However, Illinois courts have repeatedly indicated that Illinois securities laws are intended to protect Illinois investors as well as the public in general and therefore should be liberally construed. See,
 
 e.g., Foreman v.
 
 Holsman, 10 Ill.2d 551, 553, 141 N.E.2d 31, 32 (1957) (discussing Illinois Securities Law of 1919, predecessor to the 1953 Act);
 
 Silverman v. Chicago Ramada Inn, Inc.,
 
 63 Ill.App.2d 96, 99-100, 211 N.E.2d 596, 598 (1965);
 
 Meihsner v. Runyon,
 
 23 Ill.App.2d 446, 456, 163 N.E.2d 236, 241 (1960). In light of this settled Illinois policy and the absence of express statutory requirements about the manner in which a repurchase offer must be accepted, the verbal communication of each appellee to Van Dyke sufficiently manifests the assent of each to the offer.
 

 However, the Van Dykes insist that these undisputed verbal manifestations of assent are insufficient as a matter of law to constitute acceptance under Section 13(C) because appellees did not tender their partnership interests simultaneously with making these statements. The Van Dykes reach this conclusion by incorporating into Section 13(C) the tender requirement expressly included in Section 13(A) (see
 
 supra
 
 note 1). They argue that this is permissible because Section 137.13 must be read as a cohesive whole which, they insist, can only be done by implying into Section 13(C) the tender requirement of Section 13(A).
 

 Appellants are correct that Section 137.13 must be read as a single statutory scheme. However, reading Sections 13(A) and (C) in this manner makes clear that the two provisions were intended to operate separately, to provide for alternate remedies achieved by means of different procedures. For example, the Section 13(A) remedy may be invoked only at the purchaser’s election, whereas only the seller or other person liable to refund the purchase price may take action to trigger the remedy under Section 13(C). Under Section 13(A), the purchaser has six months in which to initiate his action; under Section 13(C) the purchaser has only 15 days to respond to the repurchase offer. While the remedy is identical under both provisions, this is because Section 13(C) expressly incorporates the remedy stated in Section 13(A); Section 13(C) states that the repurchase offer shall be “for a price equal to the full amount paid therefor plus interest thereon and less any income thereon as set forth in subsection A of this Section” (Section 137.13(C)). Given the legislature’s clearly-expressed intent to fashion two separate and separately-operating remedies, as well as the policy that the statute operate to protect investors, The Van Dyke position that Section 13(A)’s tender requirement should be read into Section 13(C) is untenable.
 

 The Van Dykes argue that the repurchase offer form issued by the Illinois Secretary of State in connection with Section 137.13 (“Form R,” App. at 23) establishes the requirement that tender is a condition precedent to accepting a Section 13(C) repurchase offer:
 

 Should you decide to accept this offer of rescission, kindly return the above described securities to this office together with a written notice of your election to accept said offer of rescission. Upon receipt of these materials the amount of $_plus interest will be refunded to you, and you will be released from any and all contractual obligations (name of selling party) required that you undertake in order to effectuate the sale. (App. 23)
 

 The Van Dykes contends that Section 13(C)'s direction that the repurchase offer “shall contain such further information, if any, as the Secretary of State may prescribe,” gives “Form R” the force of the law.
 

 
 *436
 
 However, “Form R” does not establish a tender requirement as a condition precedent to acceptance. The Rescission Offer Bulletin issued by the Secretary in connection with “Form R” demonstrates that the form is advisory only and not intended by the Secretary to mandate the inclusion of specific information in the repurchase offer. (See Sec. 190.1, Rescission Offer Bulletin, as amended 1982 (App. 22).) This Bulletin states only that a repurchase offer “should be in a form similar to * * * ‘Form R.’ ” (Id.) The Bulletin does not require that the language of “Form R” be strictly tracked for an offer to comply with Section 13(C).
 

 In fact, Van Dyke’s repurchase offer does not track precisely the language of “Form R.” His offer states:
 

 Should you decide to accept this offer of rescission, kindly return the above described securities to this office together with a written notice of your election to accept said offer of rescission and the purchase price plus interest will be refunded to you. (App. 19)
 

 Van Dyke’s form, even more clearly than “Form R,” does not require tender of the securities for valid acceptance. Rather, tender is required under Van Dyke’s language only as a prerequisite to obtaining the actual cash refund,
 
 i.e.,
 
 the actual performance of the already-accepted contract. And there is no evidence that the appellees are not prepared to tender their securities in order to obtain Van Dyke’s performance of the repurchase contract. In fact, at least one appellee, Schaufelberger, testified that he had taken the partnership interest papers to Van Dyke but did not surrender them only because Van Dyke refused to return the purchase price and interest as promised (July 7 Tr. at 72).
 

 For the above reasons, the order of the district court is affirmed.
 

 [1]
 

 . Ill.Rev.Stat., ch. 121‘/¡, §
 
 137.13,
 
 provides in pertinent part:
 

 § 13. Civil Remedies. A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and upon tender to the seller or into the court of the securities sold, or where the securities were not received, of any contract made in respect of such sale, the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making such sale, * * * shall be jointly and severally liable to such purchaser for (1) the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the legal rate of interest) less any income or other amounts received by such purchaser on such securities and (2) the reasonable fees of such purchaser’s attorney incurred in any action brought for recovery of the amounts recoverable hereunder.
 

 B. Notice of any election provided for in subsection A of this Section shall be given by the purchaser, within 6 months after the purchaser shall have knowledge that the sale of the securities to him is voidable, to each person from whom recovery will be sought, by registered letter addressed to the person to be notified at his last known address with proper postage affixed, or by personal service.
 

 C. No purchaser shall have any right or remedy under this Section who shall fail, within 15 days from the date of receipt thereof, to accept an offer to repurchase the securities purchased by him for a price equal to the full amount paid therefor plus interest thereon
 
 *433
 
 and less any income thereon as set forth in subsection A of this Section. Every offer of repurchase shall be in writing, shall be delivered to the purchaser or sent by registered mail addressed to the purchaser at his last known address, and shall offer to repurchase the securities sold for a price equal to the full amount paid therefor plus interest thereon and less any income thereon as set forth in subsection A of this Section. Such offer shall continue in force for 15 days from the date on which it was received by the purchaser, shall advise the purchaser of his rights and the period of time limited for acceptance thereof, and shall contain any further information, if any, as the Secretary of State may prescribe. Any agreement not to accept or refusing or waiving any such offer made during or prior to the said 15 days shall be void.
 

 [2]
 

 . Originally the Van Dykes challenged the claims of ten limited partners. However, the bankruptcy court found that three of these partners (Elling Johnson, Bobby Lovell, and Ronald Parkins) had both communicated verbal statements of acceptance and surrendered their Century Coal certificates to the Van Dykes (App. 2-3). At the oral argument, counsel for the Van Dykes advised this Court that the Van Dykes no longer pressed their appeal with regard to these three appellees. Consequently, the Van Dykes continue their appeal only with regard to the following eight appellees: Jerry and Judith Borton, Joseph Goebel, Gene Johnson, Anthony Laskowski, Bruce Sutton, Elmer Schaufelber-ger, and H. Dale Vick. These appellees were identified as “Group A” in the bankruptcy court memorandum opinion (App. 2).
 

 [3]
 

 . The cases interpreting Section 137.13 on which appellants rely are inapposite because they only determine the tender requirements under Section 137.13(A) and not under Section 137.13(C) which is the provision at issue here.
 
 Shofstall v. Allied Van Lines, Inc.,
 
 455 F.Supp. 351, 358-359 (N.D.Ill.1978);
 
 Rotstein
 
 v.
 
 Reynolds,
 
 359 F.Supp. 109, 112-113 (N.D.Ill.1973);
 
 Tobey v. NX Corp.,
 
 25 Ill.App.3d 205, 206, 323 N.E.2d 30, 32 (1974);
 
 Gowdy v. Richer,
 
 20 Ill.App.3d 514, 519, 314 N.E.2d 549, 553 (1974);
 
 Silverman v. Chicago Ramada Inn, Inc.,
 
 63 Ill.App.2d 96, 98, 211 N.E.2d 596, 598 (1965).